UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: FRAGRANCE DIRECT PURCHASER ANTITRUST LITIGATION | Case No. 2:23-02174 |
| IN RE: FRAGRANCE INDIRECT PURCHASER ANTITRUST LITIGATION | Case No. 2:23-03249 |
| IN RE: FRAGRANCE END-USER PLAINTIFF ANTITRUST LITIGATION | Case No. 2:23-16127<br><br>**OPINION DENYING FOREIGN DEFENDANTS' RULE 12(b)(2) MOTIONS TO DISMISS WITHOUT PREJUDICE** |

**WILLIAM J. MARTINI, U.S.D.J.:**

Before the Court are motions to dismiss three consolidated putative class action complaints brought against the same defendants for violations of state and federal antitrust laws and state consumer protection and unjust enrichment laws.

On March 7, 2023, European investigators conducted unannounced inspections of facilities operated by the four largest businesses in the fragrance industry and subsequently announced antitrust investigations against each of them. The investigations targeted businesses familiarly known as Firmenich, Givaudan, International Fragrances & Flavors ("IFF"), and Symrise (collectively, the "Defendant Businesses").

After the investigations were announced, a flurry of plaintiffs filed complaints against the Defendant Businesses. The Court consolidated the lawsuits into three separate putative class actions: the Direct Purchaser Action brought by companies who buy products directly from the defendants, *In re: Fragrance Direct Purchaser Antitrust Litigation*, 2:23-cv-2174; the Indirect Purchaser Action brought by individuals and companies that purchased products produced by the defendants from other sellers, *In re: Fragrance Indirect Purchaser Antitrust Litigation*, 2:23-cv-3249; and the End-User Action brought by individuals who purchase consumer goods containing the products produced by the defendants, *In re: Fragrance End-User Plaintiff Antitrust Litigation*, 2:23-16127.[1]

---

[1] For ease of reference, the Court adopts the following shorthands for citation to the three consolidated dockets: The direct purchaser docket, 2:23-cv-2174, is referred to as "D. Dkt." The direct purchaser complaint is referred to as "DC." The indirect purchaser docket, 2:23-cv-3249, is referred to as "I. Dkt." The indirect purchaser complaint is referred to as the "IC." The end-user plaintiff docket, 2:23-16127, is referred to as "E. Dkt." The end-user complaint is referred to as the "EC." When identical filings appear on all three dockets, as with the filings concerning the instant Motions, the Court cites to the direct purchaser docket for convenience.

Plaintiffs in all three actions filed consolidated complaints (the "Complaints"). Each Complaint alleges a different mix of causes of action, but together, they allege violations of Sections 1 and 3 of the Sherman Antitrust Act, 15 U.S.C. §§ 1 & 3 (seeking relief under the Clayton Act, 15 U.S.C. §§ 15 (treble damages), 25 (equitable relief)); the state antitrust and consumer protection laws of 33 states and the District of Columbia; and common law unjust enrichment. Multiple entities within the corporate families of Firmenich, Givaudan, and Symrise are named as defendants in each lawsuit.

The parties in all three consolidated suits stipulated to a briefing schedule pursuant to which the defendants filed one omnibus Rule 12(b)(6) motion to dismiss the Complaints for failure to state a claim, and three of the Defendant Businesses' foreign parent companies filed separate Rule 12(b)(2) motions to dismiss for lack of personal jurisdiction. These motions became fully briefed on July 15, 2024. This opinion addresses the pending 12(b)(2) motions; the Court will issue an additional Opinion addressing the 12(b)(6) motion. For the reasons set forth below, defendants' motions to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) are **DENIED WITHOUT PREJUDICE**.

## I.     FACTUAL BACKGROUND

Four defendants, each of whom is the foreign parent company of a U.S. subsidiary also named as a defendant in this case, move to dismiss for lack of personal jurisdiction. They are: (a) DSM-Firmenich; (b) Firmenich International SA; (c) Givaudan SA; and (d) Symrise AG (collectively, the "Foreign Defendants").

"[U]nlike Rule 12(b)(6), Rule 12(b)(2) does not limit the scope of the court's review to the face of the pleadings." *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 556 (M.D. Pa. 2009). To the contrary, "at no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction.... Once the motion is made, plaintiff must respond with actual proofs, not mere allegations." *Patterson by Patterson v. Fed. Bur. Investig.*, 893 F.2d 595, 603-04 (3d Cir. 1990).

At the outset, the Court notes that in the Complaints, the plaintiffs routinely make generalized allegations against the Defendant Businesses without attributing the alleged conduct to any particular entity. (For example, the complaints make allegations against "Firmenich," but not specifically against DSM-Firmenich AG, Firmenich International SA, Firmenich SA, Firmenich Inc., or Agilex Flavors & Fragrances, Inc.).

> This pleading practice—while permissible under the Federal Rules of Civil Procedure—disadvantages plaintiffs when responding to the Rule 12(b)(2) motions, which require that plaintiffs establish personal jurisdiction as to *each particular* corporate defendant.... Plaintiffs will be required to demonstrate that *each* of the moving defendants *individually* possesses sufficient contacts with the United States to warrant exercise of personal jurisdiction regardless of whether their corporate families, considered as a whole, possess[] such contacts.

*In re Chocolate Confectionary Antitrust Litigation*, 602 F. Supp. 2d 538, 559 n.17 (M.D. Pa. 2009) (citing *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 101 (3d Cir. 2004)); *see also Rush*

2

*v. Savchuk*, 444 U.S. 320 (1980) (rejecting state court's attribution of one defendant's conduct to the "defending parties" because "[t]he requirements of *International Shoe* … must be met as to each defendant."). The Foreign Defendants dispute the Court's jurisdiction relying primarily on declarations from corporate representatives of each Foreign Defendant.

### A. Firmenich Foreign Defendants

Firmenich International SA is a Swiss corporation headquartered in Switzerland. Until May of 2023, Firmenich International SA was the ultimate parent company of the Firmenich corporate family. On May 8, 2023, Firmenich International SA merged with DSM Group to create DSM-Firmenich AG. DSM-Firmenich AG is a Swiss corporation headquartered in Switzerland, and is now the ultimate parent company of the Firmenich corporate family. DSM-Firmenich AG and Firmenich International SA are referred to collectively as the "Firmenich Foreign Defendants."

Accompanying their Motion to Dismiss, the Firmenich Foreign Defendants filed the Declaration of Laetitia Pictet, a corporate representative for DSM-Firmenich AG. Pictet testified that both Firmenich Foreign Defendants are "holding companies organized under Swiss law for the purpose of purchasing, organizing, and managing affiliated operating companies and do not engage directly in the manufacture or sale of [Fragrance Products]." Pictet Decl. ¶ 4, D. Dkt. ECF No. 139. She further testified that neither is "registered or otherwise licensed to do business in the United States," "pay[s] taxes in the United States," "ha[s] a mailing address, telephone number, or bank account in the United States," "have a registered agent for service in the United States," "own or lease real property in the United States," "keep books or records in the United States," or "own or operate manufacturing facilities in the United States." *Id.* ¶¶ 6-12. She confirmed that the Firmenich Foreign Defendants "are distinct from Firmenich Incorporated and Agilex Flavors & Fragrances, Inc. … with separate boards of directors and board meetings" and that they "maintain separate financial books and records from" the Firmenich U.S. defendants. *Id.* ¶¶ 15-16.

In opposition, plaintiffs cited to the DSM-Firmenich AG Articles of Incorporation, which states that the corporation's purpose is to "purchase, organize and manage companies active in the research, development, manufacture, trade and/or provision of products and services in the fields of … perfumes, scents, as well as any other activities structural or incidental to or supportive to the aforementioned fields of activities, in the widest sense." Opp., ECF No. 162, at 3 (citing Cecchi Decl. Ex. F-1, D. Dkt. ECF No. 162-2). Plaintiffs also pointed out that the Firmenich Foreign Defendants' Organizational Regulations for its Board of Directors "is a holding company which directly or indirectly owns a global group of subsidiaries that conduct its business operations" and that "[t]he Board shall supervise and monitor [Firmenich's] activities to ensure proper functioning of the Business in the best interests of the Company." Opp. at 4 (citing Cecchi Decl. Ex. F-3, D. Dkt. ECF No. 162-2). Plaintiffs reiterated their allegations against Firmenich as a group, including by arguing that Firmenich has "extensive operations in the U.S." including major business locations, employees and job listing, patents, manufacturing, sales, and development operations.

### B. Givaudan SA

Givaudan SA is a Swiss company located in Switzerland. According to its corporate representative Robert Garavagno, it is a holding company which directly or indirectly controls subsidiaries around the world, including in the United States. Garavagno Decl. ¶ 4-4, D. Dkt. ECF

3

No. 136-2. Garavagno testified that Givaudan SA has no employees and none of its seven board members are domiciled in the United States (*id.* ¶ 9); it has no property, mailing address, phone listing, or bank account located in the United States (*id.* ¶ 10); it does not manufacture, distribute, or contract for the sale and supply of Fragrances or Fragrance Products in the United States (¶ 11); and it is not directly involved in sales or marketing in the United States (*id.* ¶ 12). Garavagno further testified that Givaudan SA "observes corporate formalities, and its subsidiaries, including the indirect subsidiaries in the United States, maintain separate books and records," (*id.* ¶ 13) and that Givaudan "does not direct the day-to-day operations of its indirect subsidiaries in the United States, which have their own management and employees," (*id.* ¶ 14).

As with the Firmenich Foreign Defendants, here Plaintiffs responded with citation to Givaudan SA's Articles of Incorporation, which outline a corporate purpose to "open branches and subsidiaries"; "acquire participations in other companies"; "acquire, hold, exploit, and sell real estate and intellectual property rights,"; and "engage in and carry out any commercial, financial, or other activities which are related to the purpose of the corporation." Givaudan Articles of Incorporation, Cecchi Decl., Ex. G-1 at Art. 2 ¶¶ 3-5, D. Dkt. ECF No. 162-3. They also referred the Court to Givaudan SA's 2023 Governance, Compensation and Financial Report, which indicates that their "Board of Directors is responsible for the ultimate direction, strategic supervision and control of the management of the Company." Cecchi Decl., Ex. G-2, D. Dkt. ECF No. 162-3. Plaintiffs noted that Givaudan has acquired several U.S. companies, has operated in New Jersey and around the U.S., and has litigated in U.S. courts.

### C. Symrise AG

Symrise AG is a German corporation with a principal place of business in Germany. Unlike the Firmenich Foreign Defendants and Givaudan SA, Symrise's corporate representative Markus Sattler conceded that the company "is a producer and seller of flavors, fragrances, fragrance ingredients, and raw materials,"—in other words, it is not solely a holding company. Sattler Decl. ¶ 3, D. Dkt. ECF No. 126-2. But, like the other Foreign Defendants, Sattler testified that Symrise AG is not registered to do business in the United States (*id.* ¶ 6); has no property or bank accounts located in the United States (*id.* ¶¶ 7, 9, 10); does not pay U.S. taxes (*id.* ¶ 8); and "does not advertise in the United States" (*id.* ¶ 11). Sattler further testified that Defendant Symrise Inc. is an indirectly wholly owned subsidiary of Symrise AG, and that the two companies have separate and distinct boards of directors composed of different individuals and maintain separate books and records. (*id.* ¶¶ 13-16). According to Sattler, "Symrise AG does not finance Symrise Inc.'s day-to-day operations." (*id.* ¶ 17). He also testified that Symrise US LLC is "an indirectly wholly owned subsidiary of Symrise AG" which is "a holding company and does not engage in any operational activities" including "produc[ing], market[ing], or sell[ing] any fragrances, fragrance ingredients, or raw materials." (*id.* ¶¶ 20-22).

Once again, plaintiffs relied on Symrise AG's Articles of Incorporation: "The corporate purpose is to manage a group of companies active primarily in the area of developing, manufacturing, selling and marketing scents … and active ingredients. … Management also includes provision of services to the group's companies." Cecchi Decl., Ex. S-1, D. Dkt. ECF No. 162-4. Plaintiffs pointed out that Symrise AG's 2023 Corporate Report refers to its Teterboro, New Jersey location as its "regional headquarters" and discusses the company's "integrated corporate strategy." Cecchi Decl., Ex. S-2, D. Dkt. ECF No. 162-4. Plaintiffs also pointed to

4

several LinkedIn profiles of employees claiming to work in senior roles at Symrise AG who list U.S. home locations and a list of job openings they allege were posted on LinkedIn indicating openings for Symrise AG in the U.S., all to contravene Symrise AG's assertion that it has no permanent U.S. employees. Cecchi Decl. Ex. S-4, S-5, D. Dkt. ECF No. 162-4. Symrise contested that the job openings actually reflect positions at Symrise AG (distinct from other Symrise entities), noting that "Upon information and belief, LinkedIn has a limited menu of options to identify corporate employers. Given the limited options, Symrise AG appears on LinkedIn as the employer on employee profiles and open position listings, even when the actual employer is a separate Symrise corporate affiliate." Sattler Reply Decl. ¶ 8, D. Dkt. ECF No. 171-2.

### D. FSAC Membership

Plaintiffs allege that "[i]n addition to their individual U.S. activities," the Foreign Defendants "operate in the U.S. through a proxy known as the Fragrance Science & Advisory Council ('FSAC'), a U.S.-based lobbying group." D. Dkt. ECF No. 162 at 16. In reply, Symrise AG and the Firmenich Foreign Defendants explicitly deny membership in the Fragrance Science & Advisory Council. Sattler Decl. ¶ 3, D. Dkt. ECF No. 171-2 (Symrise AG); Pictet Decl. ¶ 10, D. Dkt. ECF No. 172-1 (Firmenich Foreign Defendants). Givaudan SA does not expressly deny membership in FSAC, but does argue that plaintiffs' allegation that it is a member of FSAC is conclusory and lacks adequate supporting evidence:

> Plaintiffs speculate that Givaudan SA created the Consumer Products Fragrance Creative Centre in East Hanover, NJ, and is a member of the Fragrance Science & Advocacy Council ("FSAC"). Opp. at 11, 17–18. But the Creative Centre is located at a *Givaudan Fragrances Corporation* site in East Hanover, see Reich Decl. Ex. 2, and the FSAC website does not list Givaudan SA as a member and merely identifies a Givaudan Fragrances Corporation employee as the Vice Chair and Vice President. Reich Decl. Ex. 3 at 2. Plaintiffs' speculation does not refute that Givaudan SA neither owns nor leases property in the United States and has no operational activities there. Garavagno Decl. ¶¶ 8, 10.

Givaudan SA Reply Br. at 3, D. Dkt. ECF No. 170.

## II. ANALYSIS

Plaintiffs argue that their complaints are sufficient to establish specific personal jurisdiction over the Foreign Defendants under four jurisdictional theories: (a) the "traditional" specific personal jurisdiction test, (b) the "effects" test, (c) an agency theory of jurisdiction, and/or (d) a conspiracy theory of jurisdiction.

### A. Traditional Test for Specific Personal Jurisdiction

The traditional test is satisfied when a "defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Miller Yacht Sales, Inc.*, 384 F.3d at 96 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). "If these 'purposeful availment' and 'relationship' requirements are met, a court may exercise personal jurisdiction over a defendant so long as the exercise of that

5

jurisdiction 'comport[s] with fair play and substantial justice.'" *Id.* at 97 (citing *Burger King* at 477).

### 1. *Firmenich Foreign Defendants*

Plaintiffs' jurisdictional allegations against Firmenich International SA and DSM-Firmenich (as distinct from Firmenich as a group) are limited in their Complaints to conclusory allegations that each entity "manufactured and/or sold Fragrance Products to purchasers in the United States and elsewhere, directly or through predecessors, affiliates, or subsidiaries," that each entity "controlled [its subsidiaries] both generally and with respect to the conduct of [the subsidiaries] in furtherance of the unlawful acts alleged in [the] Complaint," (DC ¶¶ 25, 26; IC ¶¶ 28, 29; EC ¶¶ 80, 81); and that one or both entities acquired U.S.-based companies during the class period, (DC ¶ 71-75; IC ¶¶ 101-105; EC ¶¶ 125-129).

Accompanying their Motion to Dismiss, the Firmenich Foreign Defendants filed the Declaration of Laetitia Pictet, a corporate representative for DSM-Firmenich AG. Pictet testified that both Firmenich Foreign Defendants are "holding companies organized under Swiss law for the purpose of purchasing, organizing, and managing affiliated operating companies and do not engage directly in the manufacture or sale of [Fragrance Products]." Pictet Decl. ¶ 4. She further testified that neither is "registered or otherwise licensed to do business in the United States," "pay[s] taxes in the United States," "ha[s] a mailing address, telephone number, or bank account in the United States," "have a registered agent for service in the United States," "own or lease real property in the United States," "keep books or records in the United States," or "own or operate manufacturing facilities in the United States." *Id.* ¶¶ 6-12. She confirms that the Firmenich Foreign Defendants "are distinct from Firmenich Incorporated and Agilex Flavors & Fragrances, Inc. … with separate boards of directors and board meetings" and that they "maintain separate financial books and records from" the Firmenich U.S. Defendants. *Id.* ¶¶ 15-16.

Faced with a properly supported Rule 12(b)(2) motion to dismiss, Plaintiffs bore the burden to "respond with actual proofs, not mere allegations" rebutting the Firmenich Foreign Defendants' jurisdictional arguments. *Patterson v. FBI*, 893 F.2d 595, 603-04 (3d Cir. 1990). Plaintiffs attempt to do so by citation to the DSM-Firmenich AG Articles of Incorporation, which states that the corporation's purpose is to "purchase, organize and manage companies active in the research, development, manufacture, trade and/or provision of products and services in the fields of … perfumes, scents, as well as any other activities structural or incidental to or supportive to the aforementioned fields of activities, in the widest sense." Opp. at 3 (citing *id.* at Cecchi Decl. Ex. F-1). Plaintiffs also point out that the Firmenich Foreign Defendants' Organizational Regulations for its Board of Directors "is a holding company which directly or indirectly owns a global group of subsidiaries that conduct its business operations" and that "[t]he Board shall supervise and monitor [the Firmenich Group's] activities to ensure proper functioning of the Business in the best interests of the Company." Opp. at 4 (citing Cecchi Decl. Ex. F-3).

Plaintiffs' remaining proofs are even thinner: they return to the practice of grouping the Firmenich defendants indiscriminately, alleging that "Firmenich" has "extensive operations in the U.S." including major business locations, employees and job listing, patents, manufacturing, sales, and development operations, but failing to connect the dots between these alleged activities and the *foreign parent companies* in particular. Particularly in light of the "strong presumption against

6

attributing a subsidiary's forum contacts to its corporate parent," *Seltzer I.C. Optics, Ltd.*, 339 F. Supp. 2d 601, 613 (D.N.J. 2004), Plaintiffs' allegations fail to demonstrate that the foreign defendants *themselves* purposefully availed themselves of the privilege of conducting activities within the United States.

To the extent that the Plaintiffs allege any U.S. contacts by the Firmenich Foreign Defendants, none of these contacts "arise out of or relate to" the price-fixing allegations. Plaintiffs rely on the Supreme Court's 2021 decision in *Ford Motor Company v. Montana Eighth Judicial District.*, in which the Supreme Court held that "a strict causal relationship" between the defendant's conduct and the plaintiff's claim was not necessary to satisfy the specific jurisdiction test. 592 U.S. 351, 362 (2021). But *Ford Motor* still recognizes "real limits" on the exercise of personal jurisdiction over foreign defendants: a plaintiff does not need to demonstrate a *direct causal* relationship between a defendant's forum contacts and the claims for which she seeks relief, but she still must show at least that the defendant's contacts *relate to* her claims. *See id.* Where, as here, Plaintiffs' jurisdictional allegations are entirely unrelated to the alleged price-fixing scheme, and instead relate to whether defendants had a U.S. presence *at all*, defendants cannot establish personal jurisdiction. To hold otherwise would effectively reduce the specific jurisdiction analysis to a purposeful-availment-only test, by which a plaintiff could allege any in-forum commercial contact and almost automatically establish jurisdiction over any in-forum commercial claim. Plaintiff's alleged forum contacts "bear no clear relationship to the price-fixing harms of which plaintiffs complain and cannot support personal jurisdiction under the purposeful availment theory." *In re Chocolate Confectionary Antitrust Litig.*, 602 F.Supp.2d 538, 560 (M.D. Pa. 2009) (footnotes omitted).

### 2. Givaudan SA

Plaintiffs' allegations against Givaudan SA are similar to their allegations against the Firmenich Foreign Defendants. Like the Firmenich Foreign Defendants, Givaudan SA represents through the declaration of its corporate representative that it is a holding company responsible for the management of subsidiaries who carry out their corporate functions separately. Plaintiffs once again rely on corporate organizational documents which state that Givaudan SA oversees its subsidiaries; evidence of Givaudan SA's acquisitions of U.S. companies; Givaudan's presence in other unrelated U.S. litigation (including with respect to the protection of its intellectual property); and allegations of job postings and U.S. operations without evidence that these job postings and U.S. operations are the work of Givaudan SA *as distinct from* Givaudan's U.S. subsidiaries. Plaintiffs also allege that Givaudan SA appears in U.S. courts to defend their intellectual property and contract rights, but do not allege that any of this litigation related to the price-fixing conspiracy alleged in their Complaints, as would be necessary for these contacts to confer specific jurisdiction. *See In re Enterprise Rent-A-Car Wage & Hour Employment Pracs. Litig.*, 735 F. Supp. 2d 277, 333 (W.D. Pa. 2010) ("[Plaintiff] does not raise specific jurisdiction on the basis of the prior litigation in the forum. The circumstances of this litigation indisputably arise out of circumstances separate and apart from those that form the basis of the [prior litigation].").

Accordingly, Plaintiffs' argument for specific jurisdiction over Givaudan SA fails under the traditional test for the same reasons articulated with respect to the Firmenich Foreign Defendants.

### 3. *Symrise AG*

The allegations against Symrise are mostly part and parcel with the allegations against the other Foreign Defendants; the Court needs not repeat its analysis and rationale with respect to these allegations. Symrise AG is distinct from the other Foreign Defendants in one significant respect insofar as it is not strictly a holding company, but actually manufactures Fragrance Products itself (in its overseas location). Accordingly, Plaintiffs allege that Symrise Inc. (the U.S. subsidiary) merely sells the products produced by Symrise AG and that "there are no Defendant-made products sold in the U.S. other than those [Symrise AG] make[s] available through [its] subsidiaries." [Sattler Reply Decl. ¶¶ 9-10]. If this were the case, the Court may well have jurisdiction over Symrise AG. *See Rickman v. BMW of N. Am. LLC*, 538 F. Supp. 3d 429, 436-38 (D.N.J. 2021) (exercising jurisdiction over foreign parent company where subsidiary merely "serve[d] as [foreign parent's] gateway to the United States."). In *Rickman*, the Court found that BMW AG, a German corporation headquartered in Germany, manufactured vehicles, "develop[ed] the product and associated marketing concepts, and use[d a U.S. subsidiary] to bring them to the American market." *Id.* at 436, 437. On that basis, the Court permitted the claims against BMW AG to go forward, at least at the pre-discovery stage. *Id.* at 438.

The record here does not permit the same conclusion. Plaintiffs have not presented sufficient evidence for the Court to conclude that Symrise Inc. was a mere distributor for Symrise AG, and based on the declaration of Symrise AG's corporate representative, Symrise AG merely sold some products to Symrise Inc. for their use in manufacturing or resale at separately negotiated pricing. The record does not demonstrate that Symrise AG exercises any control over the pricing of its subsidiary's products. *See id.* ¶ 11. "A plaintiff cannot hold a manufacturer liable for a price-fixing scheme occurring after the product left the manufacturer's hands absent a showing that the manufacturer retained control over product pricing." *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 560 (M.D. Pa. 2009).

### 4. *Allegations against all Foreign Defendants regarding membership in FSAC*

The Plaintiffs separately allege that all of the Foreign Defendants are members of the Fragrance Science & Advocacy Council ("FSAC"), a North American trade association through which Plaintiffs allege Defendants colluded to fix prices in the U.S. market. Here, as elsewhere in their Complaints and Opposition, Plaintiffs allege that "Symrise," "Givaudan," and "Firmenich," are members of the FSAC, but fail to allege the membership of the foreign parent company subject to the instant motions to dismiss, three of whom expressly deny membership in FSAC. These conclusory allegations are insufficient to establish jurisdiction.

## B. *Calder* Effects Test

The effects test permits a court to exercise jurisdiction over "an intentional tortfeasor whose contacts with the forum otherwise do not satisfy the requirements of due process" if "the forum is the focus of the defendant's tortious conduct." *Hasson v. Fullstory, Inc.*, 114 F.4th 181, 187 (3d Cir. 2024) (cleaned up); *see also Calder v. Jones*, 465 U.S. 783, 789-90 (1984); *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265 (3d Cir. 1998). "[T]he *Calder* 'effects' test requires a plaintiff to plead facts establishing that: (1) the defendant committed an intentional tort; (2) the plaintiff felt

8

the brunt of the harm in the forum; and (3) the defendant expressly aimed his tortious conduct at the forum." *Id.* (citing *Remick v. Manfredy*, 238 F.3d 248, 258 (3d Cir. 2001)).

As the Third Circuit's recent ruling in *Hasson v. Fullstory, Inc.* makes clear, the effects test is not satisfied where the effects of *globally targeted* conduct are felt in the forum. *See generally Hasson*, 114 F.4th at 190-91. Plaintiffs' conclusory assertions that the Foreign Defendants conspired "through conduct that was calculated to have effects throughout the U.S." are insufficient to survive a Rule 12(b)(2) motion, and their argument that "evidence of a defendant's worldwide price-fixing conduct ... suggests a conspiracy to fix prices in the U.S. as well" runs directly afoul of the effects test as described in *Hasson*.

### C. Agency Theory of Personal Jurisdiction

Next, Plaintiffs argue that the Court has jurisdiction over the Foreign Defendants because each foreign parent's U.S. subsidiary acts as an agent of the parent. Plaintiffs rely on *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94 (3d Cir. 2009), in which the Third Circuit, applying Colorado (and, by extension, Tenth Circuit) law, held that the exercise of jurisdiction over a foreign parent company was permissible where the in-forum subsidiary's function was to "enable[ the foreign parent] to reach the large United States market." *Id.* at 109. Under Tenth Circuit precedent, "as all corporations must necessarily act through agents, a wholly owned subsidiary may be an agent when its activities as an agent are of such a character as to amount to doing business of the parent, [and] the parent is subjected to the in personam jurisdiction of the state in which the activities occurred." *Id.* at 108-09 (quoting *Curtis Publishing Co. v. Cassel*, 302 F.2d 132, 137 (10th Cir. 1962)). Applying that standard, the Third Circuit held that the plaintiffs made out a prima facie case of general jurisdiction over the foreign parent through an agency theory of jurisdiction. In *Rickman v. BMW of North America LLC*, 538 F. Supp. 3d 429 (D.N.J. 2021), this Court relied on *D'Jamoos* despite its application of Tenth Circuit law and noted that "*D'Jamoos* employed an agency theory of general jurisdiction, which ... is currently suspect. Agency theories remain relevant to purposeful availment, however, so *D'Jamoos* is nevertheless instructive." *Id.* at 438 n.4 (citations omitted).[2]

While "[t]here is no clear approach to determining if a non-resident corporation is subject to jurisdiction in the forum where its subsidiary or distributor is located," *id.* at 436, this Court has previously applied a four-prong test to determine whether a subsidiary is acting as the agent of a parent, considering:

> (1) whether the subsidiary is doing business in the forum that would otherwise be performed by the parent; (2) whether there is common ownership of the parent and subsidiary; (3) whether there is financial dependency; and (4) whether the parent interferes with the subsidiary's personnel, disregards the corporate formalities, and/or controls the subsidiary's marketing and operational policies.

---

[2] Though the *Rickman* court analyzed *D'Jamoos*, it expressly did not base its holding on an agent/alter-ego theory, instead holding that the Court had jurisdiction over a foreign parent company based on that company's purposeful availment. *See Rickman*, 538 F. Supp. 3d at 437; *see also supra* II.A.3 (discussing *Rickman* in purposeful availment context).

9

*High 5 Games, LLC v. Marks*, No. CV 13-7161, 2019 WL 3761114, at *7 (D.N.J. Aug. 9, 2019) (citing *Cardenas v. Spinnaker Resorts, Inc.*, 2017 WL 3315285, at *5 (D.N.J. Aug. 3, 2017)).

In *High 5 Games*, the court declined to exercise jurisdiction over the foreign parent company of a U.S. subsidiary where "Plaintiff failed to plead sufficient facts demonstrating financial dependency or that [the foreign parent company] disregards corporate formalities (or interferes) with [the U.S. subsidiaries]." *High Five Games* 2019 WL 3761114 at *7. So too here. Plaintiffs allege that "the Moving Defendants' parental control over their [subsidiaries]… pervaded the Moving Defendants' dealings with the forum," Opp. at 44, that "[t]here are no Defendant-made products sold in the U.S. other than those that the [Foreign] Defendants make available through their respective subsidiary relationships," *id.*, and that the establishment of U.S. subsidiaries "entailed a deliberate choice to enter the U.S. and New Jersey," *id.* None of these allegations, taken as true, would rebut the Foreign Defendants' attestations that their subsidiaries are financially independent and that they observe the formal distinctions between the parent and subsidiary corporations, including by keeping separate books and records, maintaining separate boards of directors, and avoiding interference with the subsidiaries' business.

### D. Conspiracy Jurisdiction

Finally, Plaintiffs claim that this Court has jurisdiction over the foreign defendants on the theory of conspiracy jurisdiction. As Defendants point out, no court in the Third Circuit has adopted the theory of conspiracy jurisdiction. In *Rickman v. BMW of North America LLC*, the Court put it this way: "Federal due process does not square with the conspiracy-jurisdiction theory. Purposeful availment must be analyzed individually to assure that *each* defendant deliberately targeted this State…. Plaintiffs cannot rely on the work-around of imputation of the acts of others in a forum state via a conspiracy." 538 F. Supp. 3d 429, 440 (D.N.J. 2021) (cleaned up). The Court agrees.

### E. Leave to Amend and Request for Jurisdictional Discovery

In a footnote, Plaintiffs request leave to amend their Complaints to the extent the Court is inclined to dismiss for lack of jurisdiction. But Plaintiffs have had the opportunity to set forth any evidence they have in support of personal jurisdiction and have not done so. There is no reason to believe amendment here would be anything less than futile.

On the other hand, jurisdictional discovery is appropriate where a jurisdictional claim has a reasonable basis and it appears that pertinent facts may be uncovered." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003). "Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'" *Id.* (citing *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361 (3d Cir. 2002); then *Mass. School of Law at Andover, Inc. v. American Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997)). "If a plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite contacts between [the party] and the forum state,' … the plaintiff's right to conduct jurisdictional

discovery should be sustained." *Id.* (quoting *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)).

Plaintiffs' jurisdictional claims are not "clearly frivolous." The corporate relationship between the Foreign Defendants and their U.S. subsidiaries is sufficiently opaque that, were Plaintiff's allegations concerning the Foreign Defendants' U.S. presence and the degree of control exercised by the Foreign Defendants over their U.S. subsidiaries true, it would be unduly difficult to prove as much without the opportunity to conduct discovery. It is for this reason that "jurisdictional discovery is particularly appropriate where the defendant is a corporation," as it is here. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 336 (3d Cir. 2009).

### III.  CONCLUSION

Because Plaintiffs have not stated a prima facie claim of personal jurisdiction over the Foreign Defendants, but their assertion of jurisdiction is not clearly frivolous, the Foreign Defendants' motions to dismiss pursuant to Rule 12(b)(2) are **DENIED WITHOUT PREJUDICE** and may be renewed, as appropriate, after **JURISDICTIONAL DISCOVERY** concludes. Plaintiffs' request for leave to amend their Complaints to cure jurisdictional defects is **DENIED**. An appropriate order follows.

DATE: February 21, 2024

WILLIAM J. MARTINI, U.S.D.J.