**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

IN RE: FRAGRANCE INDIRECT PURCHASER ANTITRUST LITIGATION

Case No. 2:23-cv-03249-WJM-JSA

---

**MEMORANDUM OF LAW IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH DEFENDANT INTERNATIONAL FLAVORS & FRAGRANCES, INC., PRELIMINARY CERTIFICATION OF THE SETTLEMENT CLASSES, APPOINTMENT OF SETTLEMENT CLASS COUNSEL AND APPOINTMENT OF ESCROW AGENT**

---

**LITE DEPALMA GREENBERG & AFANADOR, LLC**
Joseph J. DePalma
Laura K. Mummert
Catherine B. Derenze
570 Broad Street, Suite 1201
Newark, NJ 07102
Tel.: (973) 623-3000
jdepalma@litedepalma.com
lmummert@litedepalma.com
cderenze@litedepalma.com

*Liaison Counsel for Indirect Purchaser Plaintiffs*

[Additional Attorneys on Signature Page]

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iii

I.   INTRODUCTION ...................................................................................1

II.  FACTUAL BACKGROUND & PROCEDURAL POSTURE.......................3

III. MATERIAL TERMS OF THE SETTLEMENT ...........................................6

    A.  IPP Settlement Classes...................................................................6

    B.  Monetary Relief and Cooperation by IFF......................................7

    C.  Joint and Several Liability of Non-Settling Defendants.........................8

    D.  Released Claims.............................................................................8

IV.  LEGAL STANDARD ...............................................................................9

V.   THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASSES .........................................................................................10

    A.  The Proposed Settlement Classes Satisfy Rule 23(a).............................11

        1.  Numerosity .................................................................................11

        2.  Commonality .............................................................................12

        3.  Typicality....................................................................................14

        4.  Adequacy ...................................................................................15

    B.  The Proposed Settlement Classes Satisfy Rule 23(b)(3) .......................16

        1.  Predominance .............................................................................16

        2.  Superiority .................................................................................18

    C.  The Court Should Appoint Interim Class Counsel as Settlement Class Counsel .............................................................................19

VI.  THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE.............................................................................21

A.  The Settlement Satisfies Rule 23(e)(2) and the Overlapping *Girsh* and *Prudential* Factors......................................................................................24

    1.  IPPs and Interim Class Counsel have adequately represented the Settlement Classes. .........................................................24

    2.  The settlement was negotiated at arm's length under the supervision of Hon. Layn R. Phillips (Ret.).................................25

    3.  The relief provided for the class is adequate...............................27

        a.  The costs, risks, and delay of trial and appeal................28

        b.  The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims.......................................................32

        c.  The terms of any proposed award of attorney's fees, including timing of payment............................................33

        d.  Any agreement required to be identified under Rule 23(e)(3) ............................................................................34

    4.  The proposal treats class members equitably relative to each other. ...........................................................................................34

    5.  The Remaining *Girsh* Factors Demonstrate the Fairness, Reasonableness, and Adequacy of the Settlement. .....................355

        a.  The Reaction of the Classes to the Settlement (the Second Girsh Factor).......................................................35

        b.  The Stage of the Proceedings and Amount of Discovery Completed (the Third Girsh Factor)..............................35

        c.  The Ability of IFF to Withstand a Greater Judgment (the Seventh Girsh Factor)........................................................37

VII.  THE COURT SHOULD APPOINT OLD DOMINION NATIONAL BANK AS THE ESCROW AGENT ...........................................................37

VIII.   IPPS WILL SEEK APPROVAL OF A NOTICE PLAN AT A LATER DATE......................................................................................38

IX.   CONCLUSION..................................................................................39

# TABLE OF AUTHORITIES

## <u>CASES</u>

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)............................................................................*passim*

*Baby Neal v. Casey*,
    43 F.3d 48 (3d Cir. 1994) .......................................................................14

*Beltran v. SOS Ltd.*,
    No. 21-cv-07454, 2023 U.S. Dist. LEXIS 9971 (D.N.J. Jan. 3, 2023) ...29, 30

*Bryan v. Pittsburgh Glass Co.*,
    494 F.2d 799 (3d Cir. 1974) ...................................................................28

*Caddick v. Tasty Baking Co.*,
    No. 19-cv-02106, 2021 U.S. Dist. LEXIS 70016 (E.D. Pa. April 12, 2021) 22

*Ehrheart v. Verizon Wireless*,
    609 F.3d 590 (3d Cir. 2010) .....................................................................9

*Gates v. Rohm & Haas Co.*,
    248 F.R.D. 434 (E.D. Pa. 2008) ..............................................................25

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975) ...........................................................*passim*

*Hacker v. Elec. Last Mile Sols. Inc.*,
    No. 2:22-cv-00545(MEF)(LDW), 2024 U.S. Dist. LEXIS 227499
    (D.N.J. Nov. 6, 2024) ......................................................................38, 35

*In re Aetna Sec. Litig.*,
    MDL No. 1219, 2001 U.S. Dist. LEXIS 68 (E.D. Pa. Jan. 4, 2001).............32

*In re Auto. Refinishing Paint Antitrust Litig.*,
    No. MDL 1426, 2004 U.S. Dist. LEXIS 29163 (E.D. Pa. May 10,
    2004) .......................................................................................*passim*

*In re Ins. Brokerage Antitrust Litig.*,
 Nos. 1663, 04-5184 (GEB), 05-1079 (GEB), 2007 U.S. Dist. LEXIS 65037
 (D.N.J. Aug. 31, 2007) .......................................................................14, 15, 17

*In re Cattle and Beef Antitrust Litig.*,
 No. 22-md-03031 (D. Minn.) ........................................................................20

*In re Cendant Corp. Litig.*,
 264 F.3d 201 (3d Cir. 2001) ..........................................................................37

*In re Comcast Corp.*,
 No. 09-md-02034, 2018 U.S. Dist. LEXIS 150712 (E.D. Pa. Sept. 5,
 2018) ........................................................................................................25, 27

*In re Fragrance End User Antitrust Litig.*,
 No. 23-16127 (D.N.J.) ..........................................................................*passim*

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
 55 F.3d 768 (3d Cir. 1995) ................................................................19, 28, 36

*In re IMAX Sec. Litig.*,
 283 F.R.D. 178 (S.D.N.Y. 2012)...................................................................11

*In re Interior Molded Doors Indirect Purchaser Antitrust Litig.*,
 No. 3:18-cv-00850 (E.D. Va.) .......................................................................20

*In re K-Dur Antitrust Litig.*,
 686 F.3d 197 (3d Cir. 2012) ..........................................................................15

*In re Linerboard Antitrust Litig.*,
 292 F.Supp.2d 631 (E.D. Pa. 2003).........................................................29, 31

*In re Modafinil Antitrust Litig.*,
 837 F.3d 238 (3d Cir. 2016) ..........................................................................12

*In re NFL Players Concussion Injury Litig.*,
 775 F.3d 570 (3d Cir. 2014) ..................................................................*passim*

*In re Packaged Seafood Antitrust Litig.*,
 No. 15-md-2670 DMS(MSB) (S.D. Cal.) ......................................................20

v

*In re Pet Food Prods. Liab. Litig.*,
　　MDL No. 1850, 2008 U.S. Dist. LEXIS 94603 (D.N.J. Nov. 18, 2008) ......10

*In re Processed Egg Prods. Antitrust Litig.*,
　　284 F.R.D. 249 (E.D. Pa. 2012) .................................................................29

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions* ("*Prudential II*"),
　　148 F.3d 283 (3d Cir. 1998) ...............................................................18, 30

*In re Remicade Antitrust Litig.*,
　　No. 17-cv-04326, 2022 U.S. Dist. LEXIS 136774 (E.D. Pa. Aug. 2, 2022) .......................................................................................................13, 17

*In re Surescripts Antitrust Litig.*,
　　No. 19-cv-06627 (N.D. Ill.) ................................................................ 20-21

*In re Turkey Antitrust Litig.*,
　　No. 1:20-cv-02295 (N.D. Ill.) ....................................................................20

*In re ViroPharma Inc., Sec. Litig.*,
　　No. 12-2714, 2016 U.S. Dist. LEXIS 8626 (E.D. Pa. Jan. 25, 2016) ...............................................................................................27, 29, 36

*In re Warfarin Sodium Antitrust Litig.*,
　　391 F.3d 516 (3d Cir. 2004) ..................................................................9, 12

*In re Wawa Inc. Data Sec. Litig.*,
　　No. 19-6019, 2021 U.S. Dist. LEXIS 142025 (E.D. Pa. July 30, 2021) .......22

*Kanefsky v. Honeywell Int'l Inc.*,
　　No. 18-cv-15536 (WJM), 2022 U.S. Dist. LEXIS 80328 (D.N.J. May 3, 2022) .................................................................................24

*Katz v. DNC Servs. Corp.*,
　　No. 16-5800, 2024 U.S. Dist. LEXIS 20629 (E.D. Pa. Feb. 5, 2024)...........32

*McRobie v. Credit Prot. Assoc.*,
　　No. 5:18-cv-00566, 2020 U.S. Dist. LEXIS 217563 (E.D. Pa. Nov. 20, 2020) ............................................................................................. 22-23

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    259 F.3d 154 (3d Cir. 2001) ....................................................................14, 15

*Politi v. Boscov's Inc.*,
    No. 2:22-cv-1616-MCA-SDA, 2025 U.S. Dist. LEXIS 251295 (D.N.J. Dec.
    5, 2025) ........................................................................................................14, 36

*Rodriguez v. Nat'l City Bank*,
    726 F.3d 372 (3d Cir. 2013) ...........................................................................12

*Russell v. Educ. Comm'n for Foreign Med. Graduates*,
    15 F.4th 259 (3d Cir. 2021) ............................................................................11

*Saini v. BMW of N. Am., LLC*,
    No. 12-cv-6105 (CCC), 2015 U.S. Dist. LEXIS 66242
    (D.N.J. May 21, 2015) .....................................................................................36

*Smith v. Merk & Co.*,
    No. 13-2970, 2019 U.S. Dist. LEXIS 120879 (D.N.J. July 19, 2019)..........18

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011) ...........................................................................17

*Torres v. BrandSafway Indus. LLC*,
    No. 2:21-cv-01771-CCW, 2023 U.S. Dist. LEXIS 10631 (W.D. Pa. Jan. 20,
    2023) ...............................................................................................................22

*Varacallo v. Mass. Mut. Life Ins. Co.*,
    226 F.R.D. 207 (D.N.J. 2005) ...................................................................19, 27

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)........................................................................................12

*Yedlowski v. Roka Bioscience, Inc.*,
    No. 14-cv-8020-FLW-TJB, 2016 U.S. Dist. LEXIS 155951 (D.N.J. Nov. 10,
    2016) ...............................................................................................................28

## RULES

Fed. R. Civ. P. 23(a)..............................................................................11, 12

Fed. R. Civ. P. 23(a)(1)..............................................................................11

Fed. R. Civ. P. 23(a)(3)..............................................................................14

Fed. R. Civ. P. 23(a)(4).........................................................................15, 16

Fed. R. Civ. P. 23(b)(3).........................................................................*passim*

Fed. R. Civ. P. 23(e)...........................................................................10, 22

Fed. R. Civ. P. 23(e)(1)..............................................................................38

Fed. R. Civ. P. 23(e)(2).........................................................................*passim*

Fed. R. Civ. P. 23(e)(2)(C) .........................................................................27

Fed. R. Civ. P. 23(e)(2)(C)(i).......................................................................28

Fed. R. Civ. P. 23(e)(2)(C)(ii)......................................................................32

Fed. R. Civ. P. 23(e)(1)(B) .........................................................................10

Fed. R. Civ. P. 23(g)(1)..............................................................................19

Fed. R. Civ. P. 23(g)(1)(a) ..........................................................................19

Fed. R. Civ. P. 23(g)(1)(B) .........................................................................19

## OTHER AUTHORITIES

Manual for Complex Litigation (4th ed.) § 30.42 ..............................................26

Newberg on Class Actions § 8:16 (5th ed. 2011)..............................................38

William Rubenstein, Alba Conte & Herbert Newberg, Newberg on
Class Actions, § 4:25 (4th ed. 2010)..............................................................17

## I.    INTRODUCTION

Indirect Purchaser Plaintiffs ("IPPs" or "Settling Plaintiffs") respectfully submit this memorandum of law in support of their motion for preliminary approval of a settlement reached between IPPs and Defendant International Flavors and Fragrances, Inc. ("IFF").[1] This "icebreaker" settlement was reached after months of extensive and hard-fought negotiations under the supervision of an experienced mediator and former federal judge, the Honorable Layn R. Phillips (Ret.). Even after reaching a settlement in principle, the parties spent several additional months negotiating the final terms of the settlement agreement, executing the settlement agreement on April 1, 2026, approximately a year after negotiations began. This settlement resolves all federal antitrust and related state-law claims brought by IPP Class Plaintiffs against IFF.

If approved, the Settlement will provide significant benefits to members of the Settlement Classes. The Settlement Agreement provides for a $6.25 million payment in exchange for release of claims by the putative settlement classes ("Settlement Classes"), as well as substantial cooperation from IFF regarding the alleged conspiracy in IPPs' continued pursuit of their claims against the Non-Settling Defendants. IFF's cooperation will include the production of data,

---

[1] Unless otherwise specified, all capitalized terms used herein shall have the same definition and effect as in the Settlement Agreement.

1

documents and other information, as well as making employees available for interviews, depositions, and trial testimony. IPPs expect that this cooperation over the course of the litigation will be invaluable to the IPP putative classes in understanding and proving the alleged conspiracy against the Non-Settling Defendants, who remain jointly and severally liable for IFF's damages to the Settlement Classes.

Interim Class Counsel believes that the proposed settlement with IFF is fair, reasonable, and adequate and is in the best interests of the named plaintiffs[2] and members of the Settlement Classes. Declaration of Michelle J. Looby at ¶¶ 21–22 ("Looby Decl."). The proposed Settlement Classes satisfy the requirements of Rule 23, Interim Class Counsel are well qualified to serve as Settlement Class Counsel, and Old Dominion National Bank should be appointed as the Escrow Agent.

Finally, IPPs request that the Court defer approval of notice to the class following additional settlements with other Defendants to ensure the notice ultimately provided to class members is as effective as possible.

---

[2] The named plaintiffs are Alexia Dahmes d/b/a Alexia Viola Napa Valley, Ambient Glow Candles LLC, Buckboard, LLC d/b/a Buckboard Antiques, Chautauqua Soap Company, Danielle Clay, Claudia Akers d/b/a Copper Soap Works, Handmade Natural Beauty, LLC, Janine Jenzano, Lacey R. Harris d/b/a Lacey Harris Candle Co., Smelly Melly Soaps & Candles, LLC, Shannon Brown d/b/a Pipit & Finch, Sassy Rituals, LLC, Carol Morgan d/b/a Scents of Home, Maaike Fettah d/b/a Sunshine Alchemists Soap Co., and Erin Laws d/b/a Sweet Salvation Candle Company.

## II.    FACTUAL BACKGROUND & PROCEDURAL POSTURE

This antitrust class action stems from an alleged horizontal conspiracy among IFF and the Non-Settling Defendants[3] (collectively "Defendants") to restrain competition in the U.S. market for Fragrances and Fragrance Ingredients. Defendants are large, vertically integrated entities and the largest producers of fragrance products in the world, accounting for approximately 64% of the global fragrances market. Consol. Class Action Compl., ECF No. 43 at ¶ 98.

In March 2023, multiple competition authorities, including the U.S. Department of Justice ("DOJ"), the European Commission, the Swiss Competition Authority, and the United Kingdom's Competition & Markets Authority, carried out dawn raids on several participants in the fragrance industry, including Defendants IFF, Firmenich International SA, Givaudan SA, and Symrise AG, as well as on an industry association. *Id.* at ¶¶ 6–7.  Soon after, two indirect purchaser class actions were initiated in June 2023, as well as multiple actions on behalf of a direct purchaser class and an end-user class.[4] The indirect purchaser actions were consolidated for all purposes on August 4, 2023. ECF No. 16. Michelle Looby of Gustafson Gluek PLLC and Michael J. Flannery of Cuneo Gilbert Flannery & LaDuca, LLP were

---

[3] Non-Settling Defendants are Givaudan S.A., Givaudan Fragrances Corporation, Givaudan Flavors Corporation, Ungerer & Company, Inc., Symrise AG, Symrise Inc., Symrise US LLC, Firmenich International S.A., and Firmenich Incorporated.
[4] *See In re: Fragrance Direct Purchaser Antitrust Litig.*, No. 23-02174 (D.N.J.); *In re Fragrance End User Antitrust Litig.*, No. 23-16127 (D.N.J.).

subsequently appointed as interim co-lead counsel for the IPP classes ("Interim Class Counsel"). ECF Nos. 31, 111.

IPPs filed a Consolidated Class Action Complaint ("CAC") on February 6, 2024. ECF No. 43. IPPs allege that as early as January 1, 2018, Defendants began colluding to fix prices in the market for Fragrances and Fragrance Ingredients by agreeing to: (1) exchange competitively sensitive information among themselves, (2) divide the market by allocating certain customers among themselves, (3) impose supply constraints, (4) participate in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Fragrances at certain levels, and otherwise to fix, increase, inflate, maintain, and/or stabilize effective prices paid by Plaintiffs and Class Members, and (5) participate in meetings among themselves to implement the unlawful agreements they reached.  CAC ¶ 249.

On April 8, 2024, Defendants filed a joint motion pursuant to Rule 12(b)(6) challenging the sufficiency and timeliness of IPPs' claims and IPPs' antitrust standing. ECF No. 94. Defendants Symrise AG, Givaudan SA, DSM-Firmenich AG, Firmenich International SA, and Firmenich SA ("Foreign Defendants") also filed individual motions pursuant to Rule 12(b)(2) on personal jurisdiction grounds. ECF Nos. 80, 90, 92. The Court granted in part and denied in part Defendants' joint 12(b)(6) motion on February 21, 2025. ECF No. 137. The Court also denied Foreign

Defendants' individual motions without prejudice pending jurisdictional discovery. *Id*.

IPPs promptly commenced jurisdictional discovery and began negotiations with Defendants over the scope of the discovery. However, on June 17, 2025, the DOJ moved to intervene for the limited purpose of seeking a stay of discovery, which the Court granted on June 30, 2025. ECF Nos. 160, 162. Following IPPs' coordinated negotiations with the DOJ and the other parties, the Court entered a stipulated order for a limited stay of discovery until February 15, 2026. ECF No. 178. Pursuant to that order, IPPs were permitted to proceed with discovery on specific subjects, including supply contracts, formal trade association meetings, non-party discovery, transactional and statistical data, corporate structure, details about the existence of documents and ESI, and antitrust policies and manuals. *Id*. Pursuant to its term, the stay expired on February 15, 2026. *Id*.

The parties began settlement discussions in early 2025. Looby Decl. at ¶ 13. In March 2025, the parties engaged in an in-person mediation involving extensive arms-length negotiation under the direction of the Honorable. Layn R. Phillips as mediator. *Id.* ¶ 14. While the parties did not reach an agreement during the mediation, they continued to negotiate and further engaged in direct communications via email exchanges, telephonic communications, and video conference meetings under the supervision of Judge Phillips. *Id* ¶ 15. By the end of August 2025, IPPs

5

and IFF reached an agreement in principle to resolve IPPs' claims against IFF. *Id.*

¶ 16. Following additional negotiations concerning the specific terms of the settlement, counsel for IPPs and IFF executed a formal settlement agreement (the "Settlement Agreement") on April 1, 2026. *Id.*

## III.    MATERIAL TERMS OF THE SETTLEMENT

### A.    IPP Settlement Classes

IPPs request that the Court certify two settlement classes, which are defined as:

> **Nationwide Class:** All Persons who purchased Fragrance Products other than directly from Defendants or alleged co-conspirators for incorporation in a Finished Fragrance Product, where the Person purchased in the United States during the Class Period.
>
> **Damages Class:** All Persons who purchased Fragrance Products other than directly from Defendants or alleged co-conspirators for incorporation in a Finished Fragrance Product, where the Person purchased in an Indirect Purchaser State during the Class Period.
>
> Specifically excluded from the Classes are: purchasers that purchased Fragrance Products directly from Defendants, Defendants, IFF Released Parties, conspirators, the officers, directors, or employees of any Defendant or conspirator, any entity in which any Defendant or conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant or co-conspirator, and any Person acting on their behalf. Also excluded from the Classes are any judicial officer presiding over the Consolidated Action and the members of his/her immediate family and judicial staff, and any juror assigned to the Consolidated Action, as well as any Person who or which submits a valid and timely request for exclusion in accordance with the requirements set forth in the Notice and whose request is accepted by the Court.

Looby Decl., Ex. 1 ("Settlement Agreement") at ¶ 1.jj.

6

**B.    Monetary Relief and Cooperation by IFF**

The proposed Settlement establishes a $6,250,000 Settlement Fund for the benefit of the IPP Settlement Classes. *Id.* at ¶¶ 1.ii., 15–17.

In addition to the monetary consideration, IFF agrees to provide substantial cooperation, at IFF's cost and expense, to IPPs in their ongoing litigation against the Non-Settling Defendants. *Id.* ¶¶ 1.h., 18–19. Such cooperation includes: (1) attorney proffers and oral presentations concerning the manufacture, sale, and distribution of Fragrance Products as well as a description of facts relevant to conduct described in the Consolidated Action; (2) the production of sales data related to the subject matter of the Consolidated Action; (3) the production of documents produced to governmental bodies; (4) the production of other documents and transactional or other structured data, including cost data, reasonably requested by IPPs; (5) interviews, depositions, and affidavits of current employees; and (6) testimony at trial. *Id.* ¶ 19. This continued cooperation will be invaluable to IPPs prosecuting their case against the Non-Settling Defendants.

Subject to Court approval, the Settlement Fund will be distributed at an appropriate time to members of the Settlement Classes who submit an approved proof of claim, net of attorneys' fees, litigation expenses, and costs and expenses incurred in connection with providing Class Notice and the administration of the

7

settlement. IPPs will seek approval of the form and manner of dissemination of notice to the members of the IPP Settlement Classes at an appropriate time.

### C.      Joint and Several Liability of Non-Settling Defendants

Pursuant to the Settlement, Non-Settling Defendants remain jointly and severally liable for IFF's sales to the extent permitted and/or authorized by law. *Id.* ¶ 11. IPPs may rely on the sale of IFF's Fragrance Products to the Settlement Classes to pursue their full amount of damages from any other Defendant. *Id.*

### D.      Released Claims

In exchange for the significant benefits provided by the Settlement, all participating members of the IPP Settlement Classes will fully release IFF from all claims relating to the alleged conduct. The release language includes:

> any and all manner of claims, including Unknown Claims as defined below, causes of action, cross-claims, counter-claims, charges, liabilities, demands, judgments, suits, obligations, debts, setoffs, rights of recovery, or liabilities for any obligations of any kind whatsoever (however denominated), whether arising under federal, state, local, common, or foreign law or regulation, whether class or individual, in law or equity or arising under constitutions, statutes, regulation, ordinance, contract, or otherwise in nature, for fees, costs, penalties, fines, debts, expenses, attorneys' fees, and damages, whenever incurred, and liabilities of any nature whatsoever (including joint and several), known or unknown, suspected or unsuspected, asserted or unasserted, arising from or relating in any way to any conduct alleged or that could have been alleged in and arising from the factual predicate of the Consolidated Action, or any amended complaint or pleading therein, or the sale of Fragrance Products during the Class Period, which shall be deemed to include but not be limited to: (i) communications related to Fragrance Products between any IFF Released Party and any other Defendants or other seller of Fragrance

8

Products or participant in the conspiracy alleged in the Consolidated Action; (ii) agreements, arrangements, or understandings whether express or implied related to Fragrance Products between any IFF Released Party and any other Defendant or other seller of Fragrance Products or any other participant in the conspiracy alleged in the Consolidated Action; (iii) the sharing of customer information between any IFF Released Party and any other Defendant or other seller of Fragrance Products or any other participant in the conspiracy alleged in the Consolidated Action; and (iv) the establishment, calculation, communication, manipulation, or use of the price of any Fragrance Product.

*Id.* ¶ 1.kk.

The released claims do not include (1) claims against the Non-Settling Defendants, (2) personal injury claims as a result of the purchase or use of IFF Fragrance Products, (3) claims relating to IFF's Flavor Products, (4) claims asserted in the Direct Purchaser Action, and (5) claims asserted in the End User Plaintiffs Action. *Id*.

## IV.   LEGAL STANDARD

The Third Circuit has a "strong judicial policy in favor of class action settlement." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010). "Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts." *Id.* at 594–95; *see also In re Warfarin Sodium Antitrust Litig*., 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged").

9

Approval of a proposed class action settlement involves a two-step process. First, the court grants preliminary approval of the settlement and provisionally certifies a settlement class. Second, after notice of the settlement and an opportunity to object is provided to the class, the court holds a fairness hearing and determines if final approval of the settlement should be granted. Fed. R. Civ. P. 23(e).

Preliminary approval should be granted when the parties proposing the settlement demonstrate that the Court is likely able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal. Fed. R. Civ. P. 23(e)(1)(B). A showing of both factors is made here.

## V. THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASSES

The propriety of certifying a class solely for purposes of settlement is well established in the Third Circuit. *See, e.g.*, *In re NFL Players Concussion Injury Litig.*, 775 F.3d 570, 583 (3d Cir. 2014) ("[P]reliminary analysis of a proposed class is ... a tool for settlement used by the parties to fairly and efficiently resolve litigation.") (emphasis in original);[5] *In re Pet Food Prods. Liab. Litig.*, MDL No. 1850, 2008 U.S. Dist. LEXIS 94603, at *55 (D.N.J. Nov. 18, 2008) ("Class actions certified for the purposes of settlement are well recognized under Rule 23."). Moreover, certification of a settlement class "has been recognized throughout the

---

[5] Cases pre-dating the amendments to Federal Rule of Civil Procedure 23 are cited so long as they are not inconsistent with the 2018 Amendments.

10

country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 188 (S.D.N.Y. 2012). Nevertheless, a settlement class, like other certified classes, must satisfy the requirements of Rules 23(a) and (b), though the manageability concerns of Rule 23(b)(3) are not at issue for a settlement class. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997) ("Whether trial would present intractable management problems ... is not a consideration when settlement-only certification is requested[.]"). As demonstrated below, the proposed Settlement Classes satisfy these requirements.

### A.    The Proposed Settlement Classes Satisfy Rule 23(a)

Rule 23(a) of the Federal Rules of Civil Procedure sets forth the prerequisites for a class and requires that:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *see also Russell v. Educ. Comm'n for Foreign Med. Graduates*, 15 F.4th 259, 265–66 (3d Cir. 2021) (citations omitted).

### 1.    Numerosity

Rule 23(a) requires that a class be "so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). In the Third Circuit, this prong is generally satisfied where "the named plaintiff demonstrates the potential number of

plaintiffs exceeds 40[.]" *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 249–50 (3d Cir. 2016) (observing that "[l]eading treatises have collected cases and recognized the general rule that ... '[a] class of 41 or more is usually sufficiently numerous....'") (citations omitted) (second alteration in original). Here, there are at least thousands of persons within the Settlement Classes. Because joinder of these persons would be impracticable, the Court will have no trouble finding the Settlement Classes as sufficiently numerous.

### 2.   Commonality

Rule 23(a) requires "questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a). This commonality requirement is satisfied if "the proposed class members share at least one question of fact or law in common with each other." *Warfarin Sodium Antitrust Litig.*, 391 F.3d at 527–28; *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) ("We quite agree that for purposes of Rule 23(a)(2) even a single common question will do."); *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 381 (3d Cir. 2013) ("That burden is not onerous. It does, however, require an affirmative showing that the class members share a common question of law or fact.").

Here, IPPs alleged that IFF and the Non-Settling Defendants conspired to fix the prices of Fragrances and Fragrance Ingredients. As alleged, Defendants' actions are questions of fact common to all members of the Settlement Classes that underlie

their claims. *See In re Remicade Antitrust Litig.*, No. 17-cv-04326, 2022 U.S. Dist. LEXIS 136774, at \*16 (E.D. Pa. Aug. 2, 2022) ("Commonality is met in this case because each Class Member's claim depends on whether Defendants unlawfully engaged in anticompetitive behavior.").

This case involves further common legal and factual questions arising from Defendants' same course of conduct, including but not limited to: (a) whether Defendants engaged in a combination to fix, raise, maintain, or stabilize the prices of Fragrances and Fragrance Ingredients sold in the United States; (b) whether the alleged conspiracy violated federal antitrust laws and/or state antitrust, unfair competition, and/or consumer protection laws; (c) whether Defendants unjustly enriched themselves to the detriment of IPPs and the Classes, thereby entitling IPPs and members of the Classes to disgorgement of all benefits derived by Defendants; (d) whether the Defendants' conduct caused injury to the business or property of IPPs and members of the Classes; (e) the appropriate measure of Class damages; (f) whether IPPs and the members of the Classes had any reason to know, suspect, or discover the conspiracy; and (g) whether Defendants fraudulently concealed the conspiracy's existence from IPPs and members of the Classes. These common questions will yield common answers and readily satisfy the commonality requirement.

13

### 3.    Typicality

Rule 23(a)(3) requires that the class representatives' claims be "typical of the claims ... of the class." Fed. R. Civ. P. 23(a)(3). "The typicality inquiry is intended to assess ... whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." *Baby Neal v. Casey*, 43 F.3d 48, 57–58 (3d Cir. 1994). The Third Circuit has "set a low threshold for satisfying" typicality. *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183 (3d Cir. 2001). Typicality is met when the "claims of the named plaintiffs and putative class members involve the same conduct by the defendant." *Id*. at 183–84. *See also Politi v. Boscov's Inc.*, No. 2:22-cv-1616-MCA-SDA, 2025 U.S. Dist. LEXIS 251295, at *12 (D.N.J. Dec. 5, 2025) (Plaintiffs' claims are typical of the Settlement Class where they "arise out of the same alleged conduct by Defendants"); *In re Ins. Brokerage Antitrust Litig.*, Nos. 1663, 04-5184 (GEB), 05-1079 (GEB), 2007 U.S. Dist. LEXIS 65037, at *63 (D.N.J. Aug. 31, 2007) ("If the claims of the named plaintiffs and class members involve the same conduct by the defendant, typicality is established").

Here, IPPs' and all members of the Settlement Classes' legal claims arise out of the same alleged conduct by Defendants. IPPs allege that Defendants conspired to fix the prices of Fragrances and Fragrance Ingredients that caused all members of the Settlement Classes to pay artificially inflated prices. In short, IPPs and members

14

of the Settlement Classes' claims arise out of the same alleged course of conduct, involve the same alleged injury, and seek the same relief. Thus, typicality is satisfied.

### 4.      Adequacy

Rule 23(a)(4) requires that a class representative "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To meet this requirement, the Court must find that (1) the representatives' interests do not conflict with those of the class, and (2) class counsel are capable of representing the class. *Newton*, 259 F.3d at 185. This requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Id*. (quoting *Amchem*, 521 U.S. at 625). Any conflict between the named plaintiffs and the class must be "apparent, imminent, and on an issue at the very heart of the suit." *Ins. Brokerage*, 2007 U.S. Dist. LEXIS 65037, at *65–66 (internal quotations and citations omitted).

Here, there is no conflict or antagonism between the named plaintiffs and the members of the Settlement Classes that goes to the heart of the suit. All named plaintiffs are indirect purchasers of Fragrances or Fragrance Ingredients who allegedly paid artificially inflated prices due to IFFs' and the Non-Settling Defendants' anticompetitive conduct. Their interests in obtaining compensation for this harm and preventing future anticompetitive conduct fully align with the interests of the class as a whole. *See In re K-Dur Antitrust Litig.*, 686 F.3d 197, at 223 (3d Cir. 2012) ("[A]ll of the class members have the same financial incentive for

15

purposes of the litigation – *i.e.*, proving that they were overcharged and recovering damages based on that overcharge.”).

The named plaintiffs also have demonstrated their commitment to representing the class by actively participating in this litigation. They have overseen the litigation and settlement negotiations, working with Interim Class Counsel to ensure that the interests of all class members are protected. Accordingly, the IPP Named Plaintiffs are adequate representatives of the Settlement Classes.

As further discussed *infra*, Section V.C., as Interim Class Counsel are well-qualified and experienced lawyers in antitrust class actions and are more than adequate, Rule 23(a)(4) is met.

**B.     The Proposed Settlement Classes Satisfy Rule 23(b)(3)**

Rule 23(b)(3) authorizes class certification if “the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.” Fed. R. Civ. P. 23(b)(3). The proposed Settlement Classes meet this standard.

**1.     Predominance**

To satisfy Rule 23(b)(3)’s requirement that common questions of law and fact predominate, plaintiffs must demonstrate “whether a class suit for the unitary adjudication of common issues is economical and efficient in the context of all the

issues in the suit." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 297 (3d Cir. 2011) (quoting William Rubenstein, Alba Conte & Herbert Newberg, Newberg on Class Actions, § 4:25 (4th ed. 2010)). "[P]redominance is a test readily met in certain cases alleging consumer [] fraud or violations of the antitrust laws." *Amchem*, 521 U.S. at 625.

Antitrust class actions that meet the commonality prong "are also generally found to meet the predominance requirement with ease." *Ins. Brokerage*, 2007 U.S. Dist. LEXIS 65037, at *68. "[T]he focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan*, 667 F.3d at 298. The Third Circuit has further "counseled that courts should be 'more inclined to find the predominance test met in the settlement context.'" *Remicade*, 2022 U.S. Dist. LEXIS 136774, at *25 (citation omitted).

Here, as discussed above, IPPs' antitrust claims raise several questions of law and fact regarding defendants' conduct that are common to the entire class. These common questions predominate over any individual questions. Accordingly, predominance is satisfied here. *See, e.g.*, *Ins. Brokerage*, 2007 U.S. Dist. LEXIS 65037, at *68 (antitrust claims of named plaintiffs and absent class members are identical and arise from the same set of facts regarding the defendants' alleged misconduct).

### 2.    Superiority

The remaining criterion for certification is whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions* ("*Prudential II*"), 148 F.3d 283, 312 (3d Cir. 1998). "The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any ligation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in a particular forum; and, (D) the likely difficulties in managing a class action." *Prudential II*, 148 F.3d at 312. Courts also consider whether "a class action would achieve economies of time, effort, and expense, and promote ... uniformity of decisions as to persons similarly situated...." *Amchem*, 521 U.S. at 615.

Here, the Settlement Classes contain thousands of class members "and, absent certification, they would have to conduct individual trials, which would likely prove too costly for individuals [, and] ... would burden the Court." *Smith v. Merk & Co.*, No. 13-2970, 2019 U.S. Dist. LEXIS 120879, at *9 (D.N.J. July 19, 2019) (citation omitted). Accordingly, based on, among other things, judicial economy and economic barriers to individual enforcement, a class action is superior to other available options for fair and efficient adjudication of the Settlement Classes'

18

Claims. *See, e.g.*, *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 233 (D.N.J. 2005) (finding class satisfied the superiority requirement where it was "unlikely that individual Class Members would have the resources to pursue successful litigation on their own.").

**C.    The Court Should Appoint Interim Class Counsel as Settlement Class Counsel**

If a court certifies a class, it must then appoint class counsel. Fed. R. Civ. P. 23(g)(1). In appointing class counsel, a court must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law, and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). The court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). The Third Circuit emphasized that courts examining settlement classes must "assure that class counsel: (1) possessed adequate experience; (2) vigorously prosecuted the action; and (3) acted at arm's length from the defendant." *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 429 (3d Cir. 2016) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 801 (3d Cir. 1995)).

19

Interim Class Counsel's experience in antitrust matters and diligence in this litigation helped to achieve this settlement. The Court previously evaluated Interim Class Counsel's experience when it appointed them as interim lead counsel on behalf of the IPP proposed class. *See* ECF Nos. 31, 111. Other courts have appointed Interim Class Counsel in similar litigation, recognizing their expertise and experience in complex antitrust cases like this one. *See e.g.*, *In re Packaged Seafood Antitrust Litig.*, No. 15-md-2670 DMS(MSB) (S.D. Cal.), ECF No. 119 (appointing Cuneo Gilbert & LaDuca LLP as interim co-lead counsel for a proposed class of commercial food preparers); *In re Cattle and Beef Antitrust Litig.*, No. 22-md-03031 (D. Minn.), ECF No. 91 (appointing Michelle Looby as co-lead counsel for direct purchaser class) and ECF  No. 637 (appointing Michael J. Flannery as co-lead counsel for a putative class of commercial and institutional indirect purchasers of beef); *In re Turkey Antitrust Litig.*, No. 1:20-cv-02295 (N.D. Ill.), ECF No. 196 (appointing counsel from Cuneo Gilbert & LaDuca as settlement class counsel for commercial and institutional indirect purchasers of turkey); *Generic Pharmaceuticals Pricing Antitrust Litig.*, MDL No. 2724 (E.D. Pa.) (appointment counsel from Cuneo Gilbert & LaDuca for a putative class of indirect purchaser pharmacy resellers); *In re Interior Molded Doors Indirect Purchaser Antitrust Litig.*, No. 3:18-cv-00850 (E.D. Va.), ECF No. 8 (appointing Michelle J. Looby as co-lead counsel for proposed indirect purchaser class); *In re Surescripts Antitrust Litig.*,

20

No. 19-cv-06627 (N.D. Ill.), ECF No. 51 (appointing Michelle J. Looby as co-lead counsel for a putative direct purchaser class of pharmacies).

Interim Class Counsel have "vigorously prosecuted" this litigation on behalf of the proposed Settlement Classes for the past two and a half years. Interim Class Counsel has performed substantial work to further the litigation, including identifying and investigating the claims in this action, drafting a comprehensive complaint, successfully opposing Defendants' Rule 12(b)(6) motion to dismiss, engaging in jurisdictional and other discovery, consulting with experts, and negotiating the settlement with IFF. And they will continue prosecuting IPPs' claims against the Non-Settling Defendants. Additionally, the successful negotiation of the settlement agreement with IFF after extensive negotiations overseen by the Honorable Layn R. Phillips (Ret.), a well-respected mediator, demonstrates that counsel have acted at arm's length.

For these reasons, Interim Class Counsel will more than adequately protect the interests of the Settlement Classes and IPPs and respectfully request that the Court reaffirm its prior appointments.

## VI.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE.

Pursuant to Rule 23(e)(2), the Court must determine whether the settlement is fair, reasonable, and adequate to warrant providing notice of the settlement to the class after considering the following factors:

21

(A) The class representatives and class counsel have adequately represented the class; (B) The proposal was negotiated at arm's length; (C) The relief provided for the class is adequate, taking into account; (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) The proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Courts are required to consider these factors to determine whether they would *likely* approve the proposed settlement. *See In re Wawa Inc. Data Sec. Litig.*, No. 19-6019, 2021 U.S. Dist. LEXIS 142025, at *34 (E.D. Pa. July 30, 2021) (evaluating the new Rule 23(e) requirements when considering preliminary approval of a class action settlement); *Caddick v. Tasty Baking Co.*, No. 19-cv-02106, 2021 U.S. Dist. LEXIS 70016, at *16 (E.D. Pa. April 12, 2021) (same). Accordingly, "the bar to meet the fair, reasonable and adequate standard is lowered," and courts should focus on whether the proposed settlement "discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval." *Torres v. BrandSafway Indus. LLC*, No. 2:21-cv-01771-CCW, 2023 U.S. Dist. LEXIS 10631, at *4 (W.D. Pa. Jan. 20, 2023) (internal quotation marks and citation omitted); *see also McRobie v. Credit Prot. Assoc.*, No. 5:18-cv-00566, 2020 U.S. Dist. LEXIS

22

217563, at *7 (E.D. Pa. Nov. 20, 2020) ("Preliminary approval of a proposed class action settlement is not binding on the Court and is generally granted unless a proposed settlement is obviously deficient.").

The Third Circuit in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975), also has established factors to be considered by courts when evaluating the fairness of a proposed settlement. The nine *Girsh* factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

521 F.2d at 157.

In addition to the *Girsh* factors, the Third Circuit established discretionary factors in *Prudential II* for courts to consider where applicable. *See* 148 F.3d at 323–24. The six *Prudential* factors are:

> [1] the maturity of the underlying substantive issues…; [2] the existence and probable outcome of claims by other classes and subclasses; [3] the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved – or likely to be achieved – for other claimants; [4] whether class or subclass members are accorded the right to opt out of the settlement; [5] whether any provisions for attorneys' fees are reasonable; and [6] whether the procedure for processing individual claims under the settlement is fair and reasonable.

148 F.3d at 323.

The factors identified in Rule 23(e)(2) do not "displace," but overlap with, the *Girsh* and *Prudential* factors. *See* 2018 Advisory Committee Notes to Subdivision 23(e)(2); *Kanefsky v. Honeywell Int'l Inc.*, No. 18-cv-15536 (WJM), 2022 U.S. Dist. LEXIS 80328, at *11 n.3 (D.N.J. May 3, 2022) ("Rule 23(e)(2) was amended in 2018 to include a list of factors for courts to consider in evaluating a proposed settlement of a class action. The Third Circuit has, however, continued to apply the *Girsh* and *Prudential* factors.").

The analysis below will consider the Rule 23(e)(2) factors together with the overlapping *Girsh* factors and relevant *Prudential* factors.

### A.    The Settlement Satisfies Rule 23(e)(2) and the Overlapping *Girsh* and *Prudential* Factors.

#### 1.    IPPs and Interim Class Counsel have adequately represented the Settlement Classes.

Both IPPs and IPPs' Interim Class Counsel have zealously represented the Settlement Classes. IPPs contributed significantly by overseeing all aspects of the litigation, including communicating and consulting with counsel, reviewing pleadings, and participating in settlement discussions.

In addition, IPPs retained counsel with extensive experience in complex litigation and with antitrust litigation. *See* ECF Nos. 21, 101 (Motions to Appoint Interim Lead Counsel). Plaintiffs' Counsel have vigorously prosecuted Plaintiffs'

24

claims, including by thoroughly investigating the claims, drafting a comprehensive and factually detailed consolidated complaint, successfully opposing Defendants' Rule 12(b)(6) motion to dismiss, engaging in jurisdictional discovery, consulting with experts, engaging in settlement negotiations, and participating in mediations overseen by a well-respected mediator. Accordingly, this factor supports preliminary approval.

### 2.   The settlement was negotiated at arm's length under the supervision of Hon. Layn R. Phillips (Ret.)

Whether a settlement is fair and devoid of obvious deficiencies "often focuses on whether the settlement is the product of 'arms-length negotiations.'" *In re Auto. Refinishing Paint Antitrust Litig.*, No. MDL 1426, 2004 U.S. Dist. LEXIS 29163, at *4 (E.D. Pa. May 10, 2004) (citations omitted). Here, the Settlement culminated from extensive arm's-length negotiations undertaken in good faith by counsel for the Parties. As noted above, the Parties' negotiations involved in-person and virtual meetings over the course of approximately a year, including with the assistance of Judge Phillips. Accordingly, the process by which the Settlement was reached was fair and not the product of collusion. *See, e.g.*, *In re Comcast Corp.*, No. 09-md-02034, 2018 U.S. Dist. LEXIS 150712, at *13 (E.D. Pa. Sept. 5, 2018) (settlement negotiations involving multiple sessions with an experienced mediator followed by additional negotiations was "the product of good faith, arm's length negotiations"); *Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 444 (E.D. Pa. 2008)

25

(granting preliminary approval where settlement negotiations were at arm's length and included "two full days of mediation before an experienced mediator"); *Auto. Refinishing Paint*, 2004 U.S. Dist. LEXIS 29163, at \*6 (preliminarily approving class action settlement that "was reached after extensive arms-length negotiation between very experienced and competent counsel"). The negotiation process that resulted in the present Settlement strongly supports granting preliminary approval.

A court evaluating a class action settlement "should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation." Manual for Complex Litigation (4th ed.) § 30.42. Interim Class Counsel has extensive experience in complex class actions and antitrust claims in particular and believe the Settlement is in the best interests of the Classes. Looby Decl. at ¶¶ 15, 18–19, 21–22.

At every step of the negotiations, Interim Class Counsel weighed the risks, strengths, and weaknesses of their claims and IFF's defenses. Looby Decl. at ¶¶ 18–19, 21. The settlement reflects the best professional judgment and opinion of Interim Class Counsel based on their independent research into the industry and the investigation of the global competition authorities, jurisdictional discovery, confirmatory discovery, other discovery permitted by the Court's August 26, 2025 Order, and briefing, argument, and the decision on IFF's and Defendants' motions to dismiss. Counsel's opinion is further informed by the adversarial negotiations that

26

occurred over several issues during the extensive mediation process by highly qualified counsel for all parties. Accordingly, Interim Class Counsel's judgment is entitled to considerable weight. *See Varacallo*, 226 F.R.D. at 240 ("Class Counsel's approval of the Settlement also weighs in favor of the Settlement's fairness."); *In re ViroPharma Inc., Sec. Litig.*, No. 12-2714, 2016 U.S. Dist. LEXIS 8626, at *32 (E.D. Pa. Jan. 25, 2016) (the Court "affords considerable weight to the views of experienced counsel regarding the merits of the settlement."); *In re Comcast Corp. Set-Top Cable TV Box Antitrust Litig.*, 333 F.R.D. 364, 379 (E.D. Pa. 2019) ("Class Counsel's risk assessment was further bolstered by confirmatory discovery that occurred after the Settlement Agreement had been reached but prior to Plaintiffs' decision to move for final approval of the Settlement.")

This factor favors approval.

### 3.    The relief provided for the class is adequate.

The Settlement, which provides for monetary compensation and significant cooperation from IFF in Plaintiffs' pursuit of their claims against the Non-Settling Defendants, affords important relief to members of the Settlement Classes and is adequate when considering the Rule 23(e)(2)(C) factors and overlapping *Girsh* factors.

27

### a.      *The costs, risks, and delay of trial and appeal.*

Rule 23(e)(2)(C)(i), regarding the costs, risks, and delay of trial and appeal, "essentially incorporates six of the traditional *Girsh* factors: the complexity, expense, and likely duration of the litigation (first factor); the risks of establishing liability and damages (fourth and fifth factors); the risks of maintaining class action status through the trial (sixth factor); and the range of reasonableness of the Settlement Fund in light of the best possible recovery and the attendant risks of litigation (eighth and ninth factors)." *Hacker v. Elec. Last Mile Sols. Inc.*, No. 2:22-cv-00545(MEF)(LDW), 2024 U.S. Dist. LEXIS 227499, at *20 (D.N.J. Nov. 6, 2024).

The first *Girsh* factor considers "the probable costs, in both time and money, of continued litigation." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, at 812 (3d Cir. 1995) (quoting *Bryan v. Pittsburgh Glass Co.*, 494 F.2d 799, 801 (3d Cir. 1974)). "Settlement is favored under this factor if litigation is expected to be complex, expensive and time consuming." *Yedlowski v. Roka Bioscience, Inc.*, No. 14-cv-8020-FLW-TJB, 2016 U.S. Dist. LEXIS 155951, at *34 (D.N.J. Nov. 10, 2016) (citation omitted).

This is a complex antitrust case. Despite being nearly three years into litigation, the case remains in the early stages and will likely continue against IFF for several more years absent settlement. The bulk of jurisdictional discovery

28

remains to be completed and fact discovery has not yet begun; there are bound to be extensive expert discovery and related disputes, including *Daubert* motions; motions for class certification and summary judgment will require significant briefing and reliance on competing expert reports; and the shear expense of taking such a complex case to trial is certain. *See ViroPharma*, 2016 U.S. Dist. LEXIS 8626, at *28–29 (finding that continuing litigation would involve substantially more motion practice, including motions to dismiss and for class certification, each of which would likely require oral argument, extensive briefing, potential Daubert challenges and "battles between competing reports").

Moreover, IFF has demonstrated a willingness to litigate this matter to the fullest. This factor favors settlement.

The fourth and fifth *Girsh* factors—the risks of establishing liability and damages—are commonly analyzed together. *Beltran v. SOS Ltd.*, No. 21-cv-07454, 2023 U.S. Dist. LEXIS 9971, at *12 (D.N.J. Jan. 3, 2023) (citations omitted). These factors require a court to "balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *In re Linerboard Antitrust Litig.*, 292 F.Supp.2d 631, 640–41 (E.D. Pa. 2003).

Complex cases such as this one are inherently fraught with risk and uncertainty, particularly in the early stages of the litigation. *In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 249, 272 (E.D. Pa. 2012) ("[A]ntitrust class action

29

litigation is complex, and, especially at its early stages, inherently rife with risk and unpredictability in terms of ultimately prevailing to establish liability and damages and achieve class certification."). IPPs face the risk that a nationwide class and/or a damages class may not be certified and Defendants' dispositive motions may be granted. Proceeding to trial before a jury bears additional risks and uncertainties, as the Court and counsel for all parties here are well aware. Furthermore, many of IFF's co-conspirator Defendants reside abroad in Switzerland and Germany. Obtaining the necessary discovery from these Defendants poses additional layers of risk and complications for IPPs in proving their claims. *See Beltran*, 2023 U.S. Dist. LEXIS 9971, at *12 ("Given that much of the evidence Plaintiffs need is in China, this further complicates Plaintiffs' chances of success.").

Proving class-wide damages also bears risk and will require sophisticated expert testimony that is likely to be the subject of *Daubert* motions.

The sixth *Girsh* factor—the risk of maintaining a class action through trial—favors settlement. "Under Federal Rule of Civil Procedure 23(a), a district court may decertify or modify a class at any time during the litigation if it proves to be unmanageable." *In Re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 321 (3d Cir. 1998). But for the proposed settlement, IFF would likely oppose certification of a nationwide class for injunctive relief and certification of a damages class in the indirect purchaser states. Even if one or both of these classes

30

are certified for litigation, IFF would likely seek Rule 23(f) review. Moreover, proceeding to trial will inevitably carry the risk of decertification. This factor favors settlement.

The eighth and ninth *Girsh* factors require a court to consider whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case were to go to trial. *In re Linerboard Antitrust Litig.*, 292 F.Supp.2d at 642–43. This assessment should consider "the present value of damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, compared with the amount of the proposed settlement." *Id.* (quoting *Prudential II*, 148 F.3d at 322).

This Settlement provides a great outcome to all members of the Settlement Classes. IFF has agreed to pay $6.25 million and provide invaluable cooperation with IPPs at all stages in prosecuting their claims against the other Defendants. These factors weigh in favor of approval. *See Auto. Refinishing Paint*, 2004 U.S. Dist. LEXIS 29163, at *7 (granting preliminary approval where settling defendants agreed to a cash payment and to assist plaintiffs in pursuing their claims against the remaining defendants).

While IPPs believe their case is strong, any greater recovery IPPs may obtain at trial is offset by the immediate benefits of the Settlement to the class now and the time and costs involved in continuing litigation against IFF over the next several

31

years. In other words, the finality and certainty of settlement should be preferred compared with the substantial risks and costs associated with ongoing litigation. *See In re Aetna Sec. Litig.*, MDL No. 1219, 2001 U.S. Dist. LEXIS 68, at *34 (E.D. Pa. Jan. 4, 2001) ("settlement represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution").

Moreover, the Non-Settling Defendants remain jointly and severally liable for the alleged conspiracy, which weighs in favor of approval. *In re Auto. Refinishing Paint*, 2004 U.S. Dist. LEXIS 29163, at *6. This factor weighs in favor of approval.

> **b.**      ***The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims.***

Rule 23(e)(2)(C)(ii) overlaps with the discretionary *Prudential* factor that considers the fairness of the procedure for processing individual claims. *See Katz v. DNC Servs. Corp.*, No. 16-5800, 2024 U.S. Dist. LEXIS 20629, at *29 (E.D. Pa. Feb. 5, 2024). Both are satisfied here.

The Settlement Agreement provides for a distribution process of the Net Settlement Fund[6] that is effective and fair. Members of the Settlement Classes are required to submit a court-approved proof of claim and release form by a certain date (to be determined). *See* Settlement Agreement ¶ 43.a.–b. The Claims Administrator will then determine if the claimant's submission complies with the Settlement

---

[6] IPPs will move at the appropriate time for approval of a Plan of Distribution.

32

Agreement and any applicable orders. *Id.* ¶ 43.c. Should the Administrator identify any deficiencies in the submissions, the claimants must be timely notified and provided with an opportunity to cure. *Id.* ¶ 43.d. Any claimant whose claim has been rejected may contest such rejection, and if not resolved through the administrator, be subject to Court review. *Id.* ¶ 43.e. Interim Class Counsel will present the Claims Administrator's final determinations to the Court for approval. *Id.* ¶ 43.f. Any remaining non-*de minimis* balance after distribution will be reallocated among Authorized Claimants in an equitable fashion. *Id.* ¶ 50.

###### c.    *The terms of any proposed award of attorney's fees, including timing of payment.*

This factor overlaps with the fifth *Prudential* factor regarding whether any provisions for attorneys' fees are reasonable. Interim Class Counsel has not yet moved for an award of attorneys' fees which makes this factor neutral. *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 441 (3d Cir. 2016).

However, at the appropriate time, Interim Class Counsel will move for an award of attorneys' fees consistent with the Settlement Agreement, which provides that class counsel may seek an award of attorneys' fees not to exceed 33-1/3% of the Settlement Fund. Settlement Agreement ¶ 30. Interim Class counsel put nearly three years of work into this matter including, among other things, independent research into the fragrance industry and the investigation of the global competition authorities, drafting pleadings, responding to joint and several individual motions to

dismiss, jurisdictional and certain other discovery permitted by the Court's August 26, 2025 Order (ECF No. 178), lengthy settlement negotiations and mediation, and drafting of the settlement documents. Given the extensive amount of work, the proposed fee of up to 33-1/3% of the Settlement Fund is reasonable. The reasonableness of the attorneys' fee award and costs will be scrutinized at the final fairness hearing, where the Court will have before it a Motion for Final Approval of the Class Action Settlement and a Motion for Attorneys' Fees and Costs.

> **d.    *Any agreement required to be identified under Rule 23(e)(3).***

The Settlement Agreement and accompanying confidential Supplemental Agreement regarding termination of the settlement if potential class members who meet certain criteria exclude themselves from the Settlement Classes set forth all relevant agreements, including the scope of IFF's extensive cooperation with IPPs in their pursuit of recovery from the remaining defendants. *See* Settlement Agreement ¶¶ 52, 57, 60–61.

> **4.    The proposal treats class members equitably relative to each other.**

The Settlement Agreement provides that the Net Settlement Fund will be distributed to Authorized Claimants in accordance with a Plan of Distribution to be approved by the Court. Settlement Agreement ¶¶ 33, 42. IPPs will move at the

34

appropriate time for approval of a Plan of Distribution that will ensure all members

of the Settlement Classes are treated equitably.

**5.    The Remaining *Girsh* Factors Demonstrate the Fairness, Reasonableness, and Adequacy of the Settlement.**

**a.    *The Reaction of the Classes to the Settlement (the Second Girsh Factor)***

"The second *Girsh* factor — the reaction of the Settlement Class — overlaps

with Rule 23(e)(4), on the opportunity for exclusion, and 23(e)(5), on the

opportunity to object." *Hacker v. Elec. Last Mile Sols. Inc.*, 2024 U.S. Dist. LEXIS

227499, at *21. It also overlaps with the fourth *Prudential* factor—whether class

members are accorded the right to opt out of the settlement.

Consistent with due process and the Federal Rules of Civil Procedure, the

Settlement Agreement provides that class members will be notified of their right to

exclude themselves from, or object to, the settlement. Settlement Agreement ¶ 35.

While the IPPs support the Settlement and believe it is in the best interest of the

Settlement Classes, the reaction of other members of the Settlement Classes will be

addressed after notice of the Settlement has been disseminated and class members

have had an opportunity to be heard.

**b.    *The Stage of the Proceedings and Amount of Discovery Completed (the Third Girsh Factor)***

The third *Girsh* factor "captures the degree of case development that class

counsel have accomplished prior to settlement," and allows the court to "determine

whether counsel had an adequate appreciation of the merits of the case before negotiating." *Gen. Motors*, 55 F.3d at 813.

During nearly three years of litigation, the parties have engaged in extensive motion practice, and jurisdictional and confirmatory discovery as permitted by the Court's August 26, 2025 Order (ECF No. 178), as well as extensive negotiations over the strengths and weaknesses of the parties' claims and defenses. Looby Decl. ¶¶ 12, 19, 21. Courts have found this factor to favor approval in similar circumstances. *See Politi v. Boscov's Inc.*, No. 22-cv-1616, 2025 U.S. Dist. LEXIS 251295, at *24 (D.N.J. Dec. 5, 2025) (third *Girsh* factor is met where the parties engaged in dispositive motion practice and informal and confirmatory discovery, including defendants' transactions during the class period); *Saini v. BMW of N. Am., LLC*, No. 12-cv-6105 (CCC), 2015 U.S. Dist. LEXIS 66242, at *23 (D.N.J. May 21, 2015) (finding the third *Girsh* factor met when the case had been litigated for two years, the parties had engaged in motion-to-dismiss briefing, and a settlement was reached through mediation); *ViroPharma*, 2016 U.S. Dist. LEXIS 8626, at *30–31 (finding that the third *Girsh* factor was satisfied when the parties had fully briefed defendants' motion to dismiss, engaged in discovery, and had met and conferred multiple times).

36

   **c.**  ***The Ability of IFF to Withstand a Greater Judgment (the Seventh Girsh Factor)***

The seventh *Girsh* factor considers whether a defendant "could withstand a judgment for an amount significantly greater than the Settlement." *In re Cendant Corp. Litig.*, 264 F.3d 201, 240 (3d Cir. 2001). Although IFF likely could withstand a greater judgment,[7] among the weight of the other factors, "this fact alone does not undermine the reasonableness of the … settlement." *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 440 (3d Cir. 2016) (observing that "in any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment"). This factor is neutral. *Id*.

## VII. THE COURT SHOULD APPOINT OLD DOMINION NATIONAL BANK AS THE ESCROW AGENT

IPP Class Plaintiffs request that the Old Dominion National Bank be appointed as the Escrow Agent to maintain the $6.25 million Settlement Fund in an interest-bearing escrow account consistent with the terms of the Settlement Agreement, ensuring the security of these funds until distribution. The Old Dominion National Bank has experience serving as escrow agent in complex class actions, including antitrust litigation, and is well-qualified to manage the Settlement Fund here.

---

[7] *See* CAC ¶ 179 (IFF's "gross profits rose from $356 million in Q4 2017 to $1 billion in Q3 2022.").

## VIII. IPPS WILL SEEK APPROVAL OF A NOTICE PLAN AT A LATER DATE

IPPs will file a separate motion to approve the form and manner of dissemination of notice to members of the Settlement Classes at a later date (the "Notice Plan"). Pursuant to the terms of the Settlement Agreement, IFF will provide cooperation, including transactional data, which will allow IPPs to develop a more comprehensive and effective notice plan, ensuring that notice reaches the appropriate class members. While Rule 23 requires notice to class members before final approval of a settlement, it does not specify when the notice plan must be approved in relation to preliminary approval of the settlement. *See* Fed. R. Civ. P. 23(e)(1); Newberg on Class Actions § 8:16 (5th ed. 2011) (Rule 23(e)(1) "does not dictate any specific time frame in which the notice must be dispatched").

In addition, the litigation is ongoing against Non-Settling Defendants, and there is potential for additional settlements that might benefit from a coordinated notice approach. Deferring approval of the notice plan will allow IPPs to coordinate notices across multiple settlements, potentially reducing administrative costs and avoiding confusion among class members who might otherwise receive multiple, separate notices.

Further, deferring approval of the notice plan for the above reasons will allow Class Counsel and the Court to ensure that the notice ultimately provided to class

members is as effective as possible, thereby protecting the interests of absent class members.

## IX.    CONCLUSION

For the foregoing reasons, the Parties respectfully ask the Court to grant IPPs' motion and: (1) certify the proposed Settlement Classes for settlement purposes only, (2) preliminarily approve the Settlement, (3) appoint Interim Class Counsel as Settlement Class Counsel, (4) appoint IPPs as representatives of the Settlement Classes, (5) appoint Old Dominion National Bank as the Escrow Agent, (6) stay all proceedings in the Action as to IFF, except as may be necessary to implement the cooperation provisions set forth in the Settlement Agreement, (7) enjoin the prosecution of any Settlement Class Released Claims by Settlement Class Released Parties against any IFF Released Parties pending final approval of the Settlement Agreement, and (8) direct IPPs to submit a motion to approve the form and manner of dissemination of notice to the members of the IPP Settlement Classes at an appropriate time.

Dated: April 6, 2026

**LITE DEPALMA GREENBERG &
AFANADOR, LLC**

*/s/ Joseph J. DePalma*
Joseph J. DePalma
Laura K. Mummert
Catherine B. Derenze
570 Broad Street, Suite 1201
Newark, NJ 07102
Tel.: (973) 623-3000
jdepalma@litedepalma.com
lmummert@litedepalma.com
cderenze@litedepalma.com

*Liaison Counsel for Indirect Purchaser Plaintiffs*

**CUNEO, GILBERT, FLANNERY &
LADUCA, LLP**
Michael J. Flannery (*pro hac vice*)
Two City Place Drive
St. Louis, MO 63141
Tel: (314) 226-1015
mflannery@cuneolaw.com

**CUNEO, GILBERT, FLANNERY &
LADUCA, LLP**
Evelyn Y. Riley (*pro hac vice*)
Cody McCracken (*pro hac vice*)
2445 M Street NW, Suite 740
Washington, DC 20037
Tel: (202) 789-3960
evelyn@cuneolaw.com
cmccracken@cuneolaw.com

40

**GUSTAFSON GLUEK**
Michelle J. Looby (*pro hac vice*)
Daniel E. Gustafson (*pro hac vice*)
Daniel C. Hedlund (*pro hac vice*)
Bailey Twyman-Metzger (*pro hac vice*)
Frances Mahoney-Mosedale (*pro hac vice*)
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
mlooby@gustafsongluek.com
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
btwymanmetzger@gustafsongluek.com
fmahoneymosedale@gustafsongluek.com

*Interim Co-Lead IPP Class Counsel*

41