# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: FRAGRANCE DIRECT PURCHASER ANTITRUST LITIGATION | Civil Action No. 23-2174 (WJM) (JSA) |
| IN RE: FRAGRANCE INDIRECT PURCHASER ANTITRUST LITIGATION | Civil Action No. 23-3249 (WJM) (JSA) |
| IN RE: FRAGRANCE END-USER PURCHASER ANTITRUST LITIGATION | Civil Action No. 23-16127 (WJM) (JSA) |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

Liza M. Walsh
Jessica K. Formichella
**WALSH PIZZI O'REILLY FALANGA LLP**
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, NJ 07102
(973) 757-1100
lwalsh@walsh.law

Robert Milne (*pro hac vice*)
Martin M. Toto
William H. Bave, III (*pro hac vice*)
Gina M. Chiappetta (*pro hac vice*)
**WHITE & CASE LLP**
1221 Avenue of the Americas
New York, NY 10020
(212) 819-8200

Michael E. Hamburger
**FBT GIBBONS LLP**
One Gateway Center
Newark, NJ 07102
(973) 596-4500
mhamburger@fbtgibbons.com

Andrew C. Finch (*pro hac vice*)
Michael A. Paskin (*pro hac vice*)
Helam Gebremariam (*pro hac vice*)
Melissa A. Syring (*pro hac vice*)
**CRAVATH, SWAINE & MOORE LLP**
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
(212) 474-1000
afinch@cravath.com
mpaskin@cravath.com

rmilne@whitecase.com
mtoto@whitecase.com
william.bave@whitecase.com
gina.chiappetta@whitecase.com

*Attorneys for Defendants Symrise AG, Symrise Inc., and Symrise US LLC*

hgebremariam@cravath.com
msyring@cravath.com

*Attorneys for Defendants Givaudan SA, Givaudan Fragrances Corporation, Ungerer & Co., and Custom Essence LLC*

Sean P. McConnell
Sarah O'Laughlin Kulik
**DUANE MORRIS LLP**
30 S. 17th Street
Philadelphia, PA 19103
(215) 979-1947
spmcconnell@duanemorris.com
sckulik@duanemorris.com

D. Jarrett Arp (*pro hac vice*)
Mari Grace (*pro hac vice*)
**DAVIS POLK & WARDWELL LLP**
1050 17th Street, NW
Washington, D.C. 20036
(202) 962-7020
jarrett.arp@davispolk.com
mari.grace@davispolk.com

Arthur J. Burke (*pro hac vice*)
Peter M. Bozzo
Christopher Lynch (*pro hac vice*)
**DAVIS POLK & WARDWELL LLP**
450 Lexington Avenue
New York, NY 10017
(212) 450-4352
arthur.burke@davispolk.com
peter.bozzo@davispolk.com
christopher.lynch@davispolk.com

*Attorneys for Defendants DSM-Firmenich AG, Firmenich International SA, Firmenich SA, Firmenich Inc., and Agilex Flavors & Fragrances, Inc.*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT.................................................................................1

RELEVANT BACKGROUND...............................................................................2

PROCEDURAL HISTORY ...................................................................................5

ARGUMENT ........................................................................................................7

I.     The *Per Se* Rule Does Not Apply.................................................................8

     A.     Plaintiffs' Factual Allegations Describe Conduct that Does Not Call for *Per Se* Treatment Under the Sherman Act.............................8

     B.     The State Law Claims Asserted by IPPs and EUPs Are Analyzed Under Substantially the Same Standards as Sherman Act Claims and Similarly Do Not Qualify for *Per Se* Treatment. .......13

II.     Plaintiffs Fail to Plead Facts Required to State a Rule of Reason Claim.................................................................................................16

CONCLUSION ...................................................................................................18

i

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amex Distrib. Co. v. Mascari*,
724 P.2d 596 (Ariz. Ct. App. 1986)...................................................................................18

*Animal Sci. Prods., Inc. v. China Nat. Metals & Mins. Imp. & Exp. Corp.*,
596 F. Supp. 2d 842 (D.N.J. 2008) .....................................................................................9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).........................................................................................................13

*Barlow v. Serv. Emps. Int'l Union Loc. 668*,
90 F.4th 607 (3d Cir. 2024) ...............................................................................................7

*Black Box Corp. v. Avaya, Inc.*,
No. 07-6161, 2008 WL 4117844 (D.N.J. Aug. 29, 2008) .........................................11

*Bridgeport Harbour Place I, LLC v. Ganim*,
32 A.2d 296 (Conn. 2011) ...............................................................................................18

*Broad. Music, Inc. v. Columbia Broad. Sys., Inc.*,
441 U.S. 1 (1979).............................................................................................................9

*Burtch v. Milberg Factors, Inc.*,
662 F.3d 212 (3d Cir. 2011).........................................................................................8, 9

*Byre v. City of Chamberlain*,
362 N.W.2d 69 (S.D. 1985)...........................................................................................15

*Compliance Mktg., Inc. v. Drugtest, Inc.*,
No. 09-01241-JLK, 2010 WL 1416823 (D. Colo. Apr. 7, 2010) ..........................18

*Credit Bureau Servs., Inc. v. Experian Info. Sols., Inc.*,
828 N.W.2d 147 (Neb. 2013)........................................................................................15

*District of Columbia v. Amazon.com, Inc.*,
320 A.3d 1073 (D.C. 2024) ...........................................................................................14

*Elida, Inc. v. Harmor Realty Corp.*,
413 A.2d 1226 (Conn. 1979)..........................................................................................14

*Grams v. Boss*,
294 N.W.2d 473 (Wis. 1980)........................................................................................16

ii

*Howard Hess Dental Laboratories Inc. v. Dentsply Intern., Inc.*,
602 F.3d 237 (3d Cir. 2010)........................................................................................18

*In re Allergan ERISA Litig.*,
975 F.3d 348 (3d Cir. 2020).........................................................................................13

*In re Ins. Brokerage Antitrust Litig.*,
618 F.3d 300 (3d Cir. 2010)...........................................................................8, 9, 17, 18

*In re Mushroom Direct Purchaser Antitrust Litig.*,
No. 06-0620, 2015 WL 6322383 (E.D. Pa. May 26, 2015).......................................11

*In re Processed Egg Prods. Antitrust Litig.*,
962 F.3d 719 (3d Cir. 2020)...........................................................................................8

*Innovation Ventures v. Liquid Mfg.*,
885 N.W.2d 861 (Mich. 2016).....................................................................................14

*Kessel v. Monongalia Cnty. Gen. Hosp. Co.*,
648 S.E.2d 366 (W. Va. 2007).....................................................................................15

*Kleen Prods. LLC v. Int'l Paper*,
276 F. Supp. 3d 811 (N.D. Ill. 2017), *aff'd sub nom. Kleen Prods. LLC v. Georgia-Pac. LLC*, 910 F.3d 927 (7th Cir. 2018) ................................................................12

*Klor's, Inc. v. Broadway-Hale Stores, Inc.*,
359 U.S. 207 (1959)........................................................................................................9

*Lambrix v. Tesla, Inc.*,
737 F. Supp. 3d 822 (N.D. Cal. 2024) ........................................................................14

*Leegin Creative Leather Prods. Inc., v. PSKS, Inc.*,
551 U.S. 877 (2007)....................................................................................................8, 9

*Minuteman, LLC v. Microsoft Corp.*,
795 A.2d 833 (N.H. 2002) ...........................................................................................15

*Mueller v. Wellmark, Inc.*,
861 N.W.2d 563 (Iowa 2015) ......................................................................................14

*Nev. Recycling & Salvage, Ltd. v. Reno Disposal Co., Inc.*,
423 P.3d 605 (Nev. 2018).............................................................................................15

*Nw. Med. Lab'ys, Inc. v. Blue Cross & Blue Shield of Or., Inc.*,
794 P.2d 428 (Or. 1990) ..............................................................................................18

*Ohio v. Am. Express Co.*,
585 U.S. 529 (2018)................................................................................................16, 17

iii

*Or. Laborers-Emps. Health & Welfare Tr. Fund v. Philip Morris Inc.*,
  185 F.3d 957 (9th Cir. 1999) ..................................................................15

*People ex rel. Woodard v. Colo. Springs Bd. of Realtors, Inc.*,
  692 P.2d 1055 (Colo. 1984)....................................................................14

*People v. Rattenni*,
  81 N.Y.2d 166 (1993) .............................................................................15

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
  124 F.3d 430 (3d Cir. 1997)...............................................................16, 17

*Risner v. Law Sch. Admission Council, Inc.*,
  No. 25-4461, 2026 WL 1161443 (E.D. Pa. Apr. 28, 2026)....................11

*Robinson v. Jackson Hewitt, Inc.*,
  No. 19-9066, 2019 WL 5617512 (D.N.J. Oct. 31, 2019) ..........................8

*Romero v. Philip Morris Inc.*,
  2010-NMSC-035, 242 P.3d 280 (N.M. 2010) ........................................15

*Rose v. Vulcan Materials Co.*,
  194 S.E.2d 521 (N.C. 1973).....................................................................15

*Rx Sols., Inc. v. Caremark, L.L.C.*,
  164 F.4th 436 (5th Cir. 2026) ..................................................................14

*Shire US, Inc. v. Allergan, Inc.*,
  375 F. Supp. 3d 538 (D.N.J. 2019) ...........................................................7

*Spahr v. Leegin Creative Leather Prods., Inc.*,
  No. 07-187, 2008 WL 3914461 (E.D. Tenn. Aug. 20, 2008)..................15

*State Oil Co. v. Khan*,
  522 U.S. 3 (1997)........................................................................................7

*State v. MaineHealth*,
  No. CV-00-548, 2001 WL 1711006 (Me. Super. Ct. July 26, 2001) ......14

*State v. Rd. Constructors, Inc.*,
  474 N.W.2d 224 (Minn. Ct. App. 1991)...................................................14

*Summit Water Distribution Co. v. Summit Cnty.*,
  123 P.3d 437 (Utah 2005)........................................................................15

*Technicolor, Inc. v. Traeger*,
  551 P.2d 163 (Haw. 1976) .......................................................................14

iv

*Texaco Inc. v. Dagher*,
   547 U.S. 1 (2006)..........................................................................................8, 17

*Three Phoenix Co. v. Pace Indus., Inc.*,
   659 P.2d 1258 (Ariz. 1983)..................................................................................13

*United States v. Brewbaker*,
   87 F.4th 563 (4th Cir. 2023), *cert. denied*, 145 S. Ct. 544 (2024)...........................11

*United States v. Brown Univ.*,
   5 F.3d 658 (3d Cir. 1993).......................................................................................9

*UXB Sand & Gravel, Inc. v. Rosenfeld Concrete Corp.*,
   599 A.2d 1033 (R.I. 1991).....................................................................................15

*Winn-Dixie Stores, Inc. v. Eastern Mushroom Mktg. Cooperative, Inc.*,
   89 F.4th 430 (3d Cir. 2023) .........................................................................10, 11, 13

*Zimmerman v. Corbett*,
   873 F.3d 414 (3d Cir. 2017)....................................................................................7

**Statutes & Rules**

Fed. R. Civ. P. 12(c) ............................................................................................ 7

Kan. Stat. Ann. § 50-163 (2025)............................................................................14

Vt. Stat. Ann. tit. 9, § 2453a(c) (West 2026) ..........................................................15

## PRELIMINARY STATEMENT

Plaintiffs' claims should be dismissed under Rule 12(c) because the conduct they allege—which is a purportedly "*per se*" unlawful conspiracy in violation of federal and state antitrust laws—does not fall within the narrow universe of manifestly anticompetitive restraints that courts have recognized as *per se* unlawful. Instead, the conduct that Plaintiffs allege explicitly includes multifaceted relationships—Defendants not only compete in the sale of fragrances to third parties (a horizontal relationship), but also buy and sell fragrance ingredients to and from each other (a vertical relationship). Now that the pleadings have closed, Defendants' Answers confirm that they have vertical supplier relationships with one another in addition to their horizontal relationships as competitors.

Plaintiffs' claims therefore cannot stand as a matter of law. The Third Circuit has held that the *per se* rule is inapplicable to "hybrid relationships" that contain both horizontal and vertical aspects—like the relationship among the Defendants here—because they require multiple levels of cooperation to effectuate anticompetitive harm and thus cannot be condemned as anticompetitive on their face. As a result, the *per se* rule is the wrong standard for evaluating the alleged conduct, which must instead be evaluated only under the rule of reason. But Plaintiffs' Complaints do not even attempt to plead a rule of reason claim—in particular, because they fail to include allegations that purport to define a relevant

1

market and because they fail to plead any facts demonstrating anticompetitive effects in any such market. Those deficiencies are fatal to a rule of reason claim, and judgment on the pleadings should be granted for Defendants.[1]

## RELEVANT BACKGROUND[2]

Defendants manufacture and sell aromatic ingredients and compounds, which the Complaints refer to as "Fragrances" or "Fragrance Products."[3] Fragrances provide distinctive scents to the consumer goods into which they are incorporated, such as perfumes, cosmetics, household cleaning products, and soaps, which the

---

[1] By joining this motion, Symrise AG does not concede that it is subject to the Court's personal jurisdiction and reserves all rights to renew its challenge to personal jurisdiction. The Firmenich Defendants join this motion only to the extent it seeks judgment on the pleadings with respect to the Indirect Purchaser Plaintiffs' and the End-User Plaintiffs' Complaints. The Firmenich Defendants do not join the motion with respect to the Direct Purchaser Plaintiffs' Complaint.

[2] This section focuses on the factual allegations relevant to Defendants' 12(c) motion. A more complete recitation of the facts alleged in the Complaints is set forth in the Memorandum of Law in Support of Defendants' Omnibus Motion to Dismiss the Consolidated Complaints (ECF No. 140-1), and is incorporated by reference.

[3] The Direct Purchasers' Consolidated Complaint ("DC") and End-User Plaintiffs' Consolidated Complaint ("EC") define "Fragrance Products" as encompassing both "fragrance ingredients" and "fragrance compounds." DC ¶ 45; *In re Fragrance Direct Purchaser Antitrust Litig*., No. 23-02174 ("DPP Action"), ECF No. 107; EC ¶ 98; *In re Fragrance End-User Plaintiff Antitrust Litig*., No. 23-16127 ("EUP Action"), ECF No. 38. The Producer Indirect Purchaser Plaintiffs' Consolidated Complaint ("IC") defines "Fragrances" in substantially the same way. IC ¶ 2; *In re Fragrance Indirect Purchaser Antitrust Litig*., No. 23-03249 ("IPP Action"), ECF No. 230. For simplicity, Defendants use the term "Fragrances" herein, unless quoting directly from the DC or EC, to refer to the compounds ready for incorporation into Finished Fragrance Products, which are also referred to as consumer products or final goods.

Complaints refer to as "Finished Fragrance Products."  (DC ¶¶ 2, 50; IC ¶¶ 1, 87, 94; EC ¶¶ 2, 110.)

In general, Fragrances are formulated from fragrance ingredients, which are combined into the fragrance compounds sold to manufacturers of consumer goods. (DC ¶ 44; IC ¶ 81; EC ¶ 99.)  Each Defendant group allegedly manufactures between 176 and 255 fragrance ingredients (DC ¶ 159; IC ¶ 209; EC ¶ 214), from thousands of raw materials sourced from global suppliers.  (DC ¶¶ 41-42, 119; IC ¶¶ 78-79, 168; EC ¶¶ 96-97, 174.)  The Complaints allege that many fragrance ingredients are complex synthetic chemicals created in a laboratory and manufactured on an industrial scale.  (DC ¶¶ 47-48; IC ¶¶ 82-85; EC ¶¶ 100-102.) Although Plaintiffs assert that some fragrance ingredients are "interchangeable commodit[ies]" (DC ¶ 58; IC ¶ 105; EC ¶ 112), Plaintiffs also acknowledge that Defendants develop fragrance ingredients through substantial, ongoing investment in proprietary chemistry.  Plaintiffs allege, for example, that Defendants use "cutting-edge chemistry and biotechnology" to create novel synthetic molecules, and that Givaudan alone "synthesize[s] nearly 2,000 new molecules every year." (DC ¶ 161; IC ¶ 211; EC ¶ 216.)  Defendants thus allegedly "occupy a critical point of the supply chain," producing chemical inputs that they and others use to make Fragrances.  (DC ¶ 43; IC ¶ 80; EC ¶ 98.)

Plaintiffs allege that each Defendant produces a "subset" of fragrance

3

ingredients.  (DC ¶ 160; IC ¶ 210; EC ¶ 215.)  Defendants then sell fragrance ingredients to other fragrance compound makers, third-party manufacturers for incorporation into consumer products, as well as to other Defendants.  (DC ¶¶ 49, 67, 186; IC ¶ 114; EC ¶ 121.)  While Defendants "primarily manufacture fragrance ingredients" for their "own" use (DC ¶ 66; IC ¶ 113; EC ¶ 120), they regularly sell fragrance ingredients to, and procure fragrance ingredients from, other Defendants. (DC ¶ 67;  IC ¶ 114;  EC ¶ 121.)  Although Defendants dispute Plaintiffs' characterizations of the inter-Defendant relationships, Defendants all admit that they supply one another with fragrance ingredients.  (DPP Action, ECF No. 290, ¶ 49; *id.*, ECF No. 292, ¶¶ 39, 49, 67; IPP Action, ECF No. 235, ¶ 86; *id.*, ECF No. 236, ¶ 86; *id.*, ECF No. 237, ¶ 86; EUP Action, ECF No. 219, ¶¶ 103, 121; *id.*, ECF No. 220, ¶¶ 103, 121; *id.*, ECF No. 221, ¶¶ 103, 121.)  There is thus no dispute that the relationships among Defendants are hybrid in nature, including both vertical and horizontal aspects.

Plaintiffs contend these inter-Defendant sales of fragrance ingredients—*i.e.*, the vertical relationships—play a central role in their alleged anticompetitive conduct.  Plaintiffs allege that "[b]y transacting with one another, Defendants learn of capacity and price points for fragrance ingredients from one another" (DC ¶ 67; IC ¶ 114; EC ¶ 121), and that "inter-Defendant sales increased their dependency on each other and provided a mechanism to enforce and monitor their conspiracy." (*Id.*)

4

Plaintiffs similarly allege that "Defendants monitored their conspiracy" through inter-Defendant sales, suggesting that these sales (and purchases) gave each Defendant a window into the others' competitively sensitive pricing and sales information. (DC ¶ 139; IC ¶ 188; EC ¶ 194.) Tellingly, Plaintiffs do not allege that inter-Defendant sales lack *any* procompetitive purpose or that there are *no* legitimate reasons for such transactions. Nor do Plaintiffs allege a separate conspiracy to fix the prices of fragrance ingredients. These alleged vertical, input-supply relationships among Defendants are thus an inherent part of the alleged conduct for which Plaintiffs seek redress.

### PROCEDURAL HISTORY

Defendants previously moved under Rule 12(b)(6) to dismiss Plaintiffs' Section 1 claim on several grounds, including for failure to plausibly allege the existence of a conspiracy. (DPP Action, ECF No. 140; IPP Action, ECF No. 94; EUP Action, ECF No. 78.) That motion did not include the argument presented in this motion—*i.e.*, that notwithstanding being labeled a *per se* unlawful price-fixing claim, Plaintiffs' allegations actually describe conduct that is properly analyzed only under the rule of reason, and that Plaintiffs failed to allege basic facts necessary to sustain such a claim. The foreign defendants also moved under Rule 12(b)(2) to

5

dismiss for lack of personal jurisdiction.[4]  On February 21, 2025, this Court granted in part and denied in part the motion to dismiss under Rule 12(b)(6), denied the motion to dismiss under Rule 12(b)(2), pending jurisdictional discovery and further briefing.

In parallel, the DOJ was conducting an investigation and moved to intervene in this case on June 18, 2025.  After the DOJ intervened, the parties entered into a stipulation with the DOJ that stayed most proceedings in these civil actions except for limited jurisdictional discovery until February 2026, at which point the DOJ announced that it had closed its nearly three-year investigation.  (DPP Action, ECF No. 260; IPP Action, ECF No. 201; EUP Action, ECF No. 193.)  The DOJ brought no charges against Defendants (or any company) based on its lengthy investigation.

Since then, the cases have accelerated:  Defendants have answered the Complaints, and the parties have exchanged dozens of discovery requests, started making document productions, and engaged in meet and confers regarding the scope of discovery.[5]

---

[4] Presently, Givaudan and Firmenich do not have pending jurisdictional disputes with Plaintiffs.  Symrise AG continues to contest personal jurisdiction.

[5] Separately, on January 27, 2026, Brian Fields, an individual who purports to represent a fourth putative class of "first U.S. purchasers," filed suit against Defendants in another action now pending before this Court.  *See Fields v. DSM Firmenich et al.*, Case No. 26-00852 (WJM)(JSA).  Like Plaintiffs, Fields alleges only *per se* (not rule of reason) violations of the federal antitrust laws.  On May 8, 2026, Defendants moved to dismiss Fields' Complaint on several grounds, including

## ARGUMENT

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A Rule 12(c) motion on the grounds that a plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion. *Zimmerman v. Corbett*, 873 F.3d 414, 417 (3d Cir. 2017); *Barlow v. Serv. Emps. Int'l Union Loc. 668*, 90 F.4th 607, 614-15 (3d Cir. 2024).

To state a claim under Section 1 of the Sherman Act, a plaintiff must allege, among other things, (1) the existence of a contract, combination, or conspiracy among defendants that (2) imposes an unreasonable restraint on trade. *See Shire US, Inc. v. Allergan, Inc.*, 375 F. Supp. 3d 538, 546 (D.N.J. 2019). Thus, even if a complaint adequately alleges the existence of an agreement as required for a Section 1 claim, a court should still dismiss the claim if the complaint fails to allege that the agreement constitutes an "unreasonable restraint." *State Oil Co. v. Khan*, 522 U.S. 3, 7, 10 (1997). To allege an unreasonable restraint, a plaintiff must allege either that the challenged agreement violates the "rule of reason" or that the restraint is "per se unlawful." *See id.* at 10-11. The rule of reason requires the plaintiff to allege (*inter*

---

that Fields' fails to plausibly allege an unreasonable restraint of trade under either the *per se* rule or rule of reason, for reasons that are substantially the same as those raised in this motion. *Id.*, ECF No. 42.

7

*alia*) that the agreement had anticompetitive effects in a relevant market. *See Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221-22 (3d Cir. 2011). The Complaints here fail under either standard.

## I. The *Per Se* Rule Does Not Apply

### A. Plaintiffs' Factual Allegations Describe Conduct that Does Not Call for *Per Se* Treatment Under the Sherman Act.

Although Plaintiffs assert that the conspiracy they allege is a *per se* violation of the Sherman Act[6] (*e.g.*, DC ¶ 105; IC ¶ 154; EC ¶ 159), the *per se* rule applies only to a small universe of "manifestly anticompetitive" restraints that "would be invalidated in all or almost all instances," and "lack any redeeming virtue." *In re Processed Egg Prods. Antitrust Litig.*, 962 F.3d 719, 726-27 (3d Cir. 2020); *see also Leegin Creative Leather Prods. Inc., v. PSKS, Inc.*, 551 U.S. 877, 886 (2007); *Texaco Inc. v. Dagher*, 547 U.S. 1, 5 (2006) ("*Per se* liability is reserved for only those agreements that are so plainly anticompetitive that no elaborate study of the industry is needed to establish their illegality.") (citation and internal quotation marks omitted); *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 316 (3d Cir. 2010) ("[P]er se is applied" when a practice "would always or almost always tend to restrict competition.") (citation and internal quotation marks omitted). Those categories

---

[6] DPPs and IPPs also allege a *per se* violation of Section 3 of the Sherman Act (DC ¶ 105, IC ¶ 154), which is analyzed "under the same standards" as Section 1. *Robinson v. Jackson Hewitt, Inc.*, No. 19-9066, 2019 WL 5617512, at *5 n.7 (D.N.J. Oct. 31, 2019).

include so-called "naked restraint[s]" among competitors "with no purpose except stifling of competition." *Broad. Music, Inc. v. Columbia Broad. Sys., Inc.*, 441 U.S. 1, 20 (1979). Paradigmatic examples of restraints on trade that courts have categorically condemned as *per se* unlawful include horizontal agreements among competitors to fix prices, divide markets, rig bids, or engage in group boycotts. *See, e.g.*, *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 316, 336; *Burtch*, 662 F.3d at 222 (citing *Klor's, Inc. v. Broadway-Hale Stores, Inc.*, 359 U.S. 207, 211-12 (1959)).

In contrast, courts decline to characterize conduct as *per se* unlawful where "the economic impact . . . is not immediately obvious." *Leegin*, 551 U.S. at 887; *see also Broad. Music*, 441 U.S. at 19 n.33 ("[T]he *per se* rule is not employed until after considerable experience with the type of challenged restraint."). For these reasons, applying the rule of reason—rather than the *per se* rule—is the "accepted standard" in antitrust cases, but for the few in which the alleged misconduct clearly fits into one of the narrow categories that warrant *per se* treatment. *Leegin*, 551 U.S. at 885-87, 895. Just because Plaintiffs label the alleged conspiracy as a *per se* violation of the antitrust laws does not make it so: The test for whether the *per se* standard applies is "one of substance, not semantics." *United States v. Brown Univ.*, 5 F.3d 658, 670 (3d Cir. 1993); *see also Animal Sci. Prods., Inc. v. China Nat. Metals & Mins. Imp. & Exp. Corp.*, 596 F. Supp. 2d 842, 858 (D.N.J. 2008) ("[T]he issue of whether the court should assess the allegedly illegal conduct under the *per se* rule

9

or the rule of reason does not depend on the litigants' positions as to which rule should apply, nor does it depend on the labels utilized in the complaint:  only the plaintiff's factual assertions allow the court to utilize the curtailed *per se* analysis.").

In *Winn-Dixie Stores, Inc. v. Eastern Mushroom Marketing Cooperative, Inc.*, the Third Circuit affirmed a district court's application of the rule of reason to a "hybrid scheme" involving defendants with varying degrees of vertical integration and who would have required cooperation at multiple levels to effectuate an alleged price-fixing agreement.  89 F.4th 430, 435 (3d Cir. 2023).[7]  As the Court explained, "the interplay between the vertical and horizontal components of [the alleged] scheme muddies the theoretical economic conclusions that a court might draw."  *Id*. at 441.  And the Third Circuit determined that it was impossible to disentangle the vertical and horizontal aspects of defendants' relationships given their "complex business arrangements."  *Id*. at 440.

Other courts within and outside of the Third Circuit have also held that certain arrangements with intertwined horizontal and vertical components must be

---

[7] In *Winn-Dixie*, the plaintiff had "forfeited" the argument that "the *per se* rule should apply to the [challenged] conspiracy," instead arguing that "an intermediate standard" called the "quick-look approach" should govern.  89 F.4th at 438, 442 n.7. Nonetheless, the Third Circuit expressly addressed how district courts should apply both the *per se* rule and the "quick-look" approach.  *Id*. at 440 (asking whether the challenged "scheme or portion of the scheme" was "sufficiently akin" to arrangements addressed in past cases "to warrant *per se* or quick-look condemnation").

evaluated under the rule of reason. *See, e.g.*, *United States v. Brewbaker*, 87 F.4th 563, 576, 579 (4th Cir. 2023) (recognizing that when a challenged restraint does not "fit neatly into either the horizontal or vertical definition," but instead "fits into both," it may be classified as a "hybrid restraint" that carries "a presumption in favor of the rule of reason"), *cert. denied*, 145 S. Ct. 544 (2024); *Black Box Corp. v. Avaya, Inc.*, No. 07-6161, 2008 WL 4117844, at *17 (D.N.J. Aug. 29, 2008) (applying rule of reason analysis to arrangement involving horizontal and vertical relationships); *In re Mushroom Direct Purchaser Antitrust Litig.*, No. 06-0620, 2015 WL 6322383, at *14 (E.D. Pa. May 26, 2015) (applying rule of reason "to the entirety of plaintiffs' claim" where court could not "untangle the vertical and horizontal aspects of the conduct of the integrated defendants"); *Risner v. Law Sch. Admission Council, Inc.*, No. 25-4461, 2026 WL 1161443, at *10-11 (E.D. Pa. Apr. 28, 2026) (ruling *Winn-Dixie* precludes the *per se* or "quick look" approaches to a comparably simpler business arrangement between the Law School Admissions Council and law schools).

Here, as in *Winn-Dixie*, Plaintiffs' own allegations confirm that they are challenging an arrangement with "interrelated and variable parts" that is not "sufficiently akin to the horizontal arrangement[s]" analyzed in past cases "to warrant *per se* . . . condemnation." 89 F.4th at 440. Plaintiffs expressly allege that Defendants *both* compete with each other in the sale of fragrance ingredients and

11

fragrance compounds to third parties (a horizontal relationship) *and* buy fragrance ingredients from and sell fragrance ingredients to each other (a vertical relationship). (*See, e.g.*, DC ¶ 49; IC ¶ 86; EC ¶ 103 ("Defendants sell fragrance ingredients to each other.").)  In other words, a sale of a fragrance ingredient from one Defendant to another is at once a transaction between horizontal competitors and an input sale from a vertical supplier to a downstream customer to be incorporated into Fragrances—which is not inherently illegal.  *See Kleen Prods. LLC v. Int'l Paper*, 276 F. Supp. 3d 811, 835 (N.D. Ill. 2017) ("[T]here is nothing inherently suspicious about competitors also being each other's customers."), *aff'd sub nom. Kleen Prods. LLC v. Georgia-Pac. LLC*, 910 F.3d 927 (7th Cir. 2018).

Not only do Plaintiffs allege the existence of customer-supplier relationships among Defendants, but they also plead that these relationships were integral to the alleged horizontal conspiracy.  Plaintiffs allege that Defendants' vertical supplier relationships enabled them to "learn of capacity and price points for fragrance ingredients from one another" and provided a "mechanism to enforce and monitor their conspiracy."  (DC ¶¶ 67, 139; IC ¶¶ 114, 188; EC ¶¶ 121, 194.)  And Plaintiffs describe how Defendants are vertically integrated with respect to various levels of the supply chains, insofar as they produce and sell both fragrance ingredients and fragrance compounds.  *Id*.  Because such linked horizontal and vertical components are "dissimilar from" the *per se* arrangements analyzed in previous decisions, courts

12

"lack 'considerable experience with the type of restraint at issue'" and must "revert to the rule of reason." *Winn-Dixie*, 89 F.4th at 439-40 (discussing previous decisions that involved "a purely horizontal conspiracy" and a "hub-and-spoke" conspiracy, neither of which are alleged here).

Plaintiffs' repeated use of the "price-fixing" label (*see, e.g.*, DC ¶ 180; IC ¶ 134; EC ¶ 159) cannot overcome the conclusion that the *per se* rule is inapplicable here.   It is well-established that such labels are merely "legal conclusion[s] couched as . . . factual allegation[s]" and should not be "accept[ed] as true." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also, e.g.*, *In re Allergan ERISA Litig.*, 975 F.3d 348, 355 (3d Cir. 2020) (finding the allegation that "Allergan and several of its pharmaceutical industry peers colluded to fix generic drug prices in violation of federal antitrust laws" was "not well-pled" and was a "conclusion[] entitled to no deference").

### B.   The State Law Claims Asserted by IPPs and EUPs Are Analyzed Under Substantially the Same Standards as Sherman Act Claims and Similarly Do Not Qualify for *Per Se* Treatment.

This Court should also review the state antitrust law claims asserted by IPPs (IC ¶¶ 281-304) and EUPs (EC ¶¶ 272-297) under the same standards as DPPs' Sherman Act claim, as the applicable state laws recognize substantially the same distinction between alleged *per se* and rule of reason restraints.   *See Three Phoenix Co. v. Pace Indus., Inc.*, 659 P.2d 1258, 1260 (Ariz. 1983) (referring

13

to the Arizona antitrust statute as the Sherman Act's "counterpart" and discussing courts' adoption of the rule of reason); *Lambrix v. Tesla, Inc.*, 737 F. Supp. 3d 822, 850 (N.D. Cal. 2024) (finding under the Cartwright Act that "hybrid agreements are not per se violations" and "are subject to the Rule of Reason"); *Elida, Inc. v. Harmor Realty Corp.*, 413 A.2d 1226, 1232 (Conn. 1979) (Connecticut Supreme Court recognizing the rule of reason); *People ex rel. Woodard v. Colo. Springs Bd. of Realtors, Inc.*, 692 P.2d 1055, 1063 (Colo. 1984) (recognizing the distinction between the rule of reason and *per se* claims in Colorado law); *District of Columbia v. Amazon.com, Inc.*, 320 A.3d 1073, 1079 (D.C. 2024) (recognizing a distinction between *per se* and rule of reason analysis in light of D.C.'s antitrust statute encouraging uniformity with federal law); *Technicolor, Inc. v. Traeger*, 551 P.2d 163, 169-70 (Haw. 1976) (recognizing Hawaii's antitrust law should be analyzed through the same lens as federal law); *Mueller v. Wellmark, Inc.*, 861 N.W.2d 563, 567 (Iowa 2015) (recognizing Iowa's adherence to federal interpretations); Kan. Stat. Ann. § 50-163 (2025) (adopting the rule of reason); *State v. MaineHealth*, No. CV-00-548, 2001 WL 1711006, at *2 (Me. Super. Ct. July 26, 2001) (recognizing the rule of reason); *Innovation Ventures v. Liquid Mfg.*, 885 N.W.2d 861, 874 (Mich. 2016) (recognizing the legislature's intent for Michigan antitrust law to follow federal judicial interpretation); *State v. Rd. Constructors, Inc.*, 474 N.W.2d 224, 225-26 (Minn. Ct. App. 1991) (recognizing the rule of reason); *Rx Sols., Inc. v. Caremark,*

14

*L.L.C.*, 164 F.4th 436, 446 (5th Cir. 2026) (recognizing Mississippi's adherence to federal interpretations); *Credit Bureau Servs., Inc. v. Experian Info. Sols., Inc.*, 828 N.W.2d 147, 151 (Neb. 2013) (same for Nebraska); *Nev. Recycling & Salvage, Ltd. v. Reno Disposal Co., Inc.*, 423 P.3d 605, 607 (Nev. 2018) (same for Nevada); *Minuteman, LLC v. Microsoft Corp.*, 795 A.2d 833, 836 (N.H. 2002) (acknowledging New Hampshire's harmonization provision in its antitrust law); *Romero v. Philip Morris Inc.*, 2010-NMSC-035, 242 P.3d 280, 289 (N.M. 2010) (same for New Mexico); *People v. Rattenni*, 81 N.Y.2d 166, 171 (1993) (recognizing the rule of reason); *Rose v. Vulcan Materials Co.*, 194 S.E.2d 521, 530-31 (N.C. 1973) (same); *Or. Laborers-Emps. Health & Welfare Tr. Fund v. Philip Morris Inc.*, 185 F.3d 957, 963 n.4 (9th Cir. 1999) (recognizing Oregon's adherence to federal interpretations); *UXB Sand & Gravel, Inc. v. Rosenfeld Concrete Corp.*, 599 A.2d 1033, 1035-36 (R.I. 1991) (recognizing the rule of reason); *Byre v. City of Chamberlain*, 362 N.W.2d 69, 73 (S.D. 1985) (recognizing South Dakota's adherence to federal interpretations); *Spahr v. Leegin Creative Leather Prods., Inc.*, No. 07-187, 2008 WL 3914461, at *13-14 (E.D. Tenn. Aug. 20, 2008) (recognizing the rule of reason in Tennessee antitrust law); *Summit Water Distribution Co. v. Summit Cnty.*, 123 P.3d 437, 444 (Utah 2005) (recognizing the Utah statutory provision aligning its antitrust law with federal interpretations); Vt. Stat. Ann. tit. 9, § 2453a(c) (West 2026) (harmonizing Vermont antitrust law with federal antitrust law as a matter of statute); *Kessel v.*

15

*Monongalia Cnty. Gen. Hosp. Co.*, 648 S.E.2d 366, 379-80 (W. Va. 2007) (recognizing the distinction between *per se* and rule of reason analysis); *Grams v. Boss*, 294 N.W.2d 473, 480 (Wis. 1980) (recognizing Wisconsin's adherence to federal interpretations).  Accordingly, the state law claims should be analyzed under the rule of reason.

**II.      Plaintiffs Fail to Plead Facts Required to State a Rule of Reason Claim.**

Plaintiffs do not even attempt to allege what is necessary to state a claim under the rule of reason.  To do so, they would have to allege facts to show that "the challenged restraint has a substantial anticompetitive effect that harms consumers in [a] relevant market."  *Ohio v. Am. Express Co.*, 585 U.S. 529, 541 (2018) ("*Amex*").  That requires at least two core sets of allegations that are entirely absent here.  *First*, Plaintiffs must provide an "accurate definition of the relevant market" to "measure [Defendants'] ability to lessen or destroy competition."  *Id*. at 543.  As the Third Circuit explained in *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997), alleging a relevant market requires pleading facts regarding "[t]he outer boundaries of a product market [as] determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it."  *Second*, Plaintiffs must also plead anticompetitive effects flowing from the challenged conduct.  Anticompetitive effects can be shown either with direct evidence, including "proof of actual detrimental effects . . . such as

16

reduced output, increased prices, or decreased quality in the relevant market," or with indirect evidence such as "proof of market power plus some evidence that the challenged restraint harms competition." *Amex*, 585 U.S. at 542 (cleaned up).

Plaintiffs do not even attempt to allege any of that. The Complaints allege only that the purported agreement is *per se* unlawful, and lack any factual allegations sufficient to satisfy any of the rule of reason's requirements. Beyond vague, colloquial references to "the market for Fragrance Products" or simply "the market," the Complaints do not attempt to define any relevant market, let alone do so "with reference to the rule of reasonable interchangeability and cross-elasticity of demand" required in the Third Circuit. *Queen City Pizza*, 124 F.3d at 436-37 (collecting cases). Nor do they allege any discrete anticompetitive effects in those markets flowing from the purported agreement. These flaws are fatal, and Plaintiffs' claims should be dismissed. *See, e.g.*, *Dagher*, 547 U.S. at 7 n.2, 8 (holding that an "antitrust claim [could] not prevail" because the challenged conduct "d[id] not fall within the narrow category of activity that is *per se* unlawful under § 1 of the Sherman Act" and noting that plaintiffs "ha[d] not put forth a rule of reason claim"). As the Third Circuit explained in *In re Insurance Brokerage*: "While pleading exclusively *per se* violations can lighten a plaintiff's litigation burdens, it is not a riskless strategy. If the court determines that the restraint at issue is sufficiently different from the *per se* archetypes to require application of the rule of reason, the

17

plaintiff's claims will be dismissed." 618 F.3d at 317. That is the same risk these Plaintiffs have taken, and their claims should likewise be dismissed.[8]

## CONCLUSION

For the foregoing reasons, this Court should grant judgment on the pleadings in favor of Defendants and dismiss these actions with prejudice.[9]

---

[8] So, too, the Court should dismiss Plaintiffs state law claims for failure to plead allegations that satisfy the rule of reason standard. *See, e.g., Amex Distrib. Co. v. Mascari*, 724 P.2d 596, 601 (Ariz. Ct. App. 1986) (finding that Plaintiff's claim failed under the rule of reason analysis for an Arizona state law claim where no adverse market impact was alleged); *Compliance Mktg., Inc. v. Drugtest, Inc.*, No. 09-01241-JLK, 2010 WL 1416823, at *17 (D. Colo. Apr. 7, 2010) (dismissing California and Colorado state law claims for failing to plead the relevant product market under rule of reason analysis); *Bridgeport Harbour Place I, LLC v. Ganim*, 32 A.2d 296, 302-04 (Conn. 2011) (upholding a motion to strike a complaint where Plaintiffs failed to allege an adverse impact to competition for a Connecticut antitrust claim); *Nw. Med. Lab'ys, Inc. v. Blue Cross & Blue Shield of Or., Inc.*, 794 P.2d 428, 437 (Or. 1990) (finding Plaintiffs failed to show anticompetitive effects in the market and thus failed under Oregon's rule of reason analysis).

[9] To the extent Plaintiffs seek leave to amend their Complaints yet again to recast their *per se* claim as a rule of reason claim, such leave should be denied. *See, e.g.*, *Howard Hess Dental Laboratories Inc. v. Dentsply Intern., Inc.*, 602 F.3d 237, 256-57 (3d Cir. 2010) ("Plaintiffs are bound by the four corners of their amended complaint . . . . To the extent the Plaintiffs are recasting their allegations in an effort to circumvent a motion to dismiss, we must reject that approach.").

18

Dated:  July 8, 2026

Respectfully submitted,

*s/ Liza M. Walsh*
Liza M. Walsh
Jessica K. Formichella
**WALSH PIZZI O'REILLY
FALANGA LLP**
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, NJ 07102
(973) 757-1100
lwalsh@walsh.law

Robert Milne (*pro hac vice*)
Martin M. Toto
William H. Bave, III (*pro hac vice*)
Gina M. Chiappetta (*pro hac vice*)
**WHITE & CASE LLP**
1221 Avenue of the Americas
New York, NY 10020
(212) 819-8200
rmilne@whitecase.com
mtoto@whitecase.com
william.bave@whitecase.com
gina.chiappetta@whitecase.com

*Attorneys for Defendants Symrise AG,
Symrise Inc., and Symrise US LLC*

*s/ Michael E. Hamburger*
Michael E. Hamburger
**FBT GIBBONS LLP**
One Gateway Center
Newark, NJ 07102
(973) 596-4500
mhamburger@fbtgibbons.com

Andrew C. Finch (*pro hac vice*)
Michael A. Paskin (*pro hac vice*)
Helam Gebremariam (*pro hac vice*)
Melissa A. Syring (*pro hac vice*)
**CRAVATH, SWAINE & MOORE
LLP**
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
(212) 474-1000
afinch@cravath.com
mpaskin@cravath.com
hgebremariam@cravath.com
msyring@cravath.com

*Attorneys for Defendants Givaudan SA,
Givaudan Fragrances Corporation,
Ungerer & Co., and Custom Essence
LLC*

*s/ Sean P. McConnell*
Sean P. McConnell
Sarah O'Laughlin Kulik
**DUANE MORRIS LLP**
30 S. 17th Street
Philadelphia, PA 19103
(215) 979-1947
spmcconnell@duanemorris.com
sckulik@duanemorris.com

19

D. Jarrett Arp (*pro hac vice*)
Mari Grace (*pro hac vice*)
**DAVIS POLK & WARDWELL LLP**
1050 17th Street, NW
Washington, D.C. 20036
(202) 962-7020
jarrett.arp@davispolk.com
mari.grace@davispolk.com

Arthur J. Burke (*pro hac vice*)
Peter M. Bozzo
Christopher Lynch (*pro hac vice*)
**DAVIS POLK & WARDWELL LLP**
450 Lexington Avenue
New York, NY 10017
(212) 450-4352
arthur.burke@davispolk.com
peter.bozzo@davispolk.com
christopher.lynch@davispolk.com

*Attorneys for Defendants DSM-Firmenich AG, Firmenich International SA, Firmenich SA, Firmenich Inc., and Agilex Flavors & Fragrances, Inc.*